# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **IN RE PLUM BABY FOOD LITIGATION** | Case No.: 21-cv-02417-NLH-SAK |
| **THIS DOCUMENT RELATES TO:** | **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |
| **ALL ACTIONS** | |

Plaintiffs Mithun Alexander, Elizabeth Austin, Emily Baccari, Alyssa Barb, Amanda Boots, Ana Butkus, Mayelin Carranza, Richard Chase, Stacey Chase, Lakeisha Daigs, Jecoliah Farmer, Jillian Geffken, Ciara Beau Hall, Kristin Hanna, Heather Hyden, Ahkilah Johnson, Mercedes Jones, Karleen Kozaczka, April Lockhart, Andrew Lohse, Lyrik Merlin, Eileen Olmos, Corinthea Pangelinan, Cindy Pereira, Carrie Reagan, Amanda Rogers, Erin Smid, Edwina Smith, Hibatunoor Syed, Alexander Van Den Essen, Fredricka Waters, Courtney Whiteway, and Natalie Williams (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, file this Consolidated Amended Class Action Complaint ("Complaint") against Defendants Campbell Soup Company ("Campbell") and Plum, PBC (collectively, "Defendants") for their misleading, deceptive, unfair, and/or false business practices and warranties concerning Defendants' baby food products (defined below) sold through the United States, which contain certain heavy metals, including arsenic, lead, cadmium, and mercury. Plaintiffs allege the following based upon personal knowledge as to themselves and their own actions and upon information and belief and investigation of their counsel as to all other matters. Given the concealed nature of Defendants' conduct, Plaintiffs believe that an opportunity to conduct discovery will reveal further support for Plaintiffs' allegations.

1

## NATURE OF THE ACTION

1.      Heavy metals, such as arsenic, lead, cadmium, and mercury, have no health benefit and are unfit for human consumption. Both the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared these heavy metals to be dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.

2.      Babies' developing brains are exceptionally sensitive to injury caused by heavy metals and several developmental processes have been shown to be highly vulnerable to heavy metal toxicity.  Even low levels of exposure to heavy metals can cause serious and often irreversible damage to brain development leading to permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.

3.      Reasonable parents, like Plaintiffs, trust manufacturers, like Defendants, to sell baby food that is healthy, nutritious, and not have harmful levels of toxins, contaminants, and chemicals. They certainly expect the food they feed their infants and toddlers to not have elevated levels of heavy metals—substances known to have significant and dangerous health consequences.

4.      Consumers lack the scientific knowledge necessary to determine whether Defendants' baby food products do in fact contain heavy metals.  Reasonable consumers therefore must and do rely on Defendants to disclose what their baby food products contain. This is especially true for ingredients like heavy metals that are material to a reasonable parent's purchasing decisions.

5.      Defendants manufacture, market, advertise, package, distribute, and sell baby foods under the brand name Plum Organics.  Defendants' own testing demonstrates that numerous Plum Organics baby food products contain elevated levels of heavy metals ("Plum Baby Foods"),[1] which

---

[1] The products listed contain >10 ppb arsenic, >5 ppb cadmium, >5 ppb lead, and/or >5 ppb mercury.  *See* Plum Organics, Baby Food Product Testing Results (2017–2019) (online at

include, but may not be limited to:

- Plum Organics Baby Food Pouches, Stage 1: Just Sweet Potato; Just Mangos; and Just Prunes;

- Plum Organics Baby Bowls, Stage 1:  Mango & Quinoa and Pear & Prune;

- Plum Organics Baby Food Pouches, Stage 2: Apple & Carrot; Apple, Blackberry, Coconut Cream & Oat; Apple, Cauliflower & Leek; Apple, Raisin & Quinoa; Apple, Raspberry, Spinach & Greek Yogurt; Apple, Spinach & Avocado; DHA Apple, Banana, Blueberry, Sunflower Seed Butter; Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet; Eat Your Colors® Strawberry, Apple, Rhubarb & Oats;  Hearty Veggie Carrots, Beans, Spinach & Tomato; Kale, Corn, Carrot & Tomato; Mango, Carrot & Coconut Cream; Pea, Kiwi, Pear & Avocado; Pear, Purple Carrot & Blueberry; Pear, Green Bean & Greek Yogurt; Pear, Spinach & Pea; Pumpkin, Spinach, Chickpea & Broccoli; and Strawberry, Banana & Granola;

- Plum Organics Baby Bowls, Stage 2:  Apple, Blackberry & Oat; Apple, Spinach & Avocado; Banana, Raspberry & Barley; Beet, Apple, Strawberry & Chia; Mango, Carrot & Turmeric; Pear, Cauliflower, Cherry & Raisin; and Pumpkin, Banana, Papaya & Cardamom;

- Plum Organics Baby Food Pouches, Stage 3: Carrot, Spinach, Turkey, Corn, Apple & Potato; Carrot, Sweet Potato, Corn, Pea & Chicken; and Carrot, Chickpea, Pea, Beef & Tomato;

- Plum Organics Mighty 4 Blends:  Apple, Blackberry, Purple Carrot, Greek Yogurt & Oat; Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; Banana, Kiwi, Spinach, Greek Yogurt & Barley; Banana, Peach, Pumpkin, Carrot, Greek Yogurt & Oat; Guava, Banana, Black Bean, Carrot, Oat; Mango & Pineapple, White Bean, Butternut Squash, Oats; Pear, Cherry, Blackberry, Strawberry, Black Bean, Spinach & Oat; Strawberry Banana, Greek Yogurt, Kale, Oat & Amaranth; and Sweet Potato, Banana & Passion Fruit, Greek Yogurt, Oat;

- Mighty Protein & Fiber: Mango, Banana, White Bean, Sunflower Seed Butter & Chia;

- Mighty Sticks: Apple Carrot and Berry Beet;

- Mighty Veggie®: Carrot, Pear, Pomegranate & Oats; Spinach, Grape, Apple & Amaranth; and Sweet Potato, Apple, Banana & Carrot;

- Plum Organics Mashups: Carrot & Mango; Strawberry & Beet; and Strawberry Blackberry Blueberry;

- Plum Organics Smoothie Mashups:  Peach & Banana;

- Plum Organics Super Puffs: Apple with Spinach; Strawberry with Beet; Mango with Sweet Potato; and Blueberry with Purple Sweet Potato;

---

https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Plum%20Organics%20Test%20Results.pdf) (last visited Nov. 1, 2021).

- Plum Organics Little Teethers: Apple with Leafy Greens; Banana with Pumpkin; and Blueberry;

- Plum Organics Mighty Nut Butter Bar:  Almond Butter and Peanut Butter;

- Plum Organics Mighty Snack Bars:  Blueberry; Pumpkin Banana; and Strawberry;

- Plum Organics Mighty Morning Bar:  Apple Cinnamon; Banana, Blueberry, Oat & Quinoa; and Blueberry Lemon;

- Plum Organics Mighty Dinos Cheddar Crackers;

- Plum Organics Grow Well Muscle;

- Plum Organics Grow Well Tummy;

- Plum Organics Super Smoothie:  Pear, Sweet Potato, Spinach, Blueberry with Beans & Oats;

- Plum Organics Jammy Sammy:  Apple, Cinnamon & Oatmeal; Blueberry & Oatmeal; Peanut Butter & Grape; and Peanut Butter & Strawberry; and

- Plum Organics Teensy Snacks:  Berry and Peach.

6.     On February 4, 2021, the Subcommittee on Economic and Consumer Policy ("House Subcommittee") of the United States House of Representatives issued a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[2] (hereinafter referred to as the "House Report").  The House Report detailed the findings from an extensive inquiry focused on the safety of baby food products and reported shockingly high levels of heavy metals in baby food products.  According to the House Report, several brands of baby food sold in the United States have "[i]nternal company standards [that] permit dangerously high levels of heavy metals, and . . . that the manufacturers have often sold foods that exceeded these levels."[3]

7.     Campbell (and implicitly Plum, PBC as the wholly-owned operating subsidiary of Campbell at the time) was one of seven baby food manufacturers named in the House Report, but one of only three manufacturers that initially refused to cooperate with the House Subcommittee.

---

[2] *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last visited Nov. 1, 2021).

[3] House Report, at 4.

Specifically, Campbell "refused to produce its testing standards and specific testing results to the Subcommittee...[and] has hidden its policies and the actual level of heavy metals in its products." The House Report explained that instead "of producing any substantive information, Campbell provided a spreadsheet self-declaring that every one of its products 'meets criteria.'"[4]  However, according to the House Report, Campbell's "testing summary hides more than it reveals, since it does not show the levels of heavy metals that the testing found or the levels of heavy metals that would 'meet criteria.'"[5]  The House Subcommittee noted that Campbell's refusal to cooperate caused "great[] concerns that Campbell's lack of cooperation might obscure the presence of even higher levels of heavy metals in their baby food products, compared to their competitors' products."[6]

8.    Despite Defendants' lack of cooperation, the House Report cited data reported by an organization concerned with the health and safety of baby food products.  According to the "Healthy Babies Bright Futures Report: What's in My Baby's Food?" ("HBBF Report") some Plum Baby Foods tested high in heavy metals.[7]

9.    On September 29, 2021, the House Subcommittee issued a new report titled "New Disclosures Show Dangerous Levels of Heavy Metals in Even More Baby Foods" (hereinafter referred to as the "Supplemental House Report"). [8]

10.    The Supplemental House Report confirmed that following the publication of the

---

[4]  *Id*., at 44.
[5]  *Id*., at 45.
[6]  *Id*., at 5.
[7]  *See* http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf (last visited Nov. 1, 2021).

[8]  *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf (last visited Nov. 1, 2021).

original report, "Plum provided its test results, which confirmed the Subcommittee's concerns about the danger of some of its products." The Supplemental House Report advised that according "to internal company documents and test results obtained by the Subcommittee, Plum Organics baby foods are tainted with high levels of heavy metals." [9]

11.    Specifically, with respect to Plum Organics, the Supplemental House Report found high levels of arsenic, lead and cadmium:

- Arsenic:  100% of Plum's Super Puff rice-based products tested between 2017 and 2019 contained in excess of 200 ppb arsenic. Plum's average Super Puff product had 233.74 ppb arsenic, including 79 ppb inorganic arsenic. Plum's products contained up to 47 ppb arsenic, and up to 225 ppb inorganic arsenic. For comparison, the maximum level of inorganic arsenic that FDA allows in bottled water is 10 ppb, and the Baby Food Safety Act would impose a maximumlevel of 15 ppb inorganic arsenic for infant cereals.

- Lead:  54.5% of Plum Organics products exceed 5 ppb lead, the maximum amount FDA allows in bottled water.

- Cadmium: 38.3% of Plum Organic products exceed 5 ppb cadmium, the maximum amount FDA allows in bottled water.[10]

12.    Recent testing commissioned by Plaintiffs' counsel also confirmed significant levels of cadmium, arsenic, and lead. For instance, Plaintiffs tested the Plum Organics "Mighty 4 Blends: Strawberry, Banana, Greek Yogurt, Kale, Amaranth & Oat Pouch," which was found to contain cadmium at a level of 21.2 ppb – more than four times the limit of allowable cadmium in bottled water.  Plaintiffs also tested three different samples of Little Teethers: Banana with Pumpkin.  All three Little Teethers samples were found to contain elevated levels of arsenic and cadmium: between 7 and 12 times the limit of allowable arsenic in bottled water and between nearly two-and-a-half and four times the limit of allowable cadmium in bottled water.  In addition, one Little Teethers sample tested nearly five times the limit of allowable lead in bottled water.  These results

---

[9]  Supplemental House Report, at 2-3.
[10] *Id*., at 3-4.

further show that heavy metals are significantly present in Plum Baby Foods.

13.    Defendants marketed Plum Baby Foods as premium baby food products that are, among other things, "organic, non-GMO, [using] whole and simple ingredients"[11] and did not disclose the presence of heavy metals in Plum Baby Foods to consumers.

14.    As a result of Defendants' misleading, deceptive, unfair, and/or false business practices and warranties, tens of thousands of consumers paid a premium price for Plum Baby Foods that they thought were safe, healthy, and nutritious, but which actually contained heavy metals. Meanwhile, Defendants profited from reasonable consumers who paid a premium price for Plum Baby Foods that both misrepresented and omitted material information as to the foods' true quality and value. Plum, PBC continues to wrongfully induce consumers to purchase Plum Baby Foods.

15.    The presence of heavy metals rendered the Plum Baby Foods unfit for their intended purpose and use, defective, worthless, and denied consumers the benefit of their bargain.

16.    The presence of heavy metals in baby foods material to consumers. Consumers would not knowingly purchase baby foods for their children from a manufacturer that allowed its baby foods to contain heavy metals. Yet, Defendants, knowingly sold Plum Baby Foods containing unsafe amounts of heavy metals. Furthermore, Defendants knowingly did so without disclosing this information to its customers.

17.    Plaintiffs, on behalf of themselves and all similarly situated individuals, seek monetary and equitable relief based on Defendants' breach of express and implied warranties, negligent misrepresentation, fraud, violation of state consumer protection statutes, and unjust

---

[11] *Food Philosophy*, Plum Organics, https://www.plumorganics.com/food-philosophy/ (last visited Nov. 1, 2021).

enrichment.

## THE PARTIES

### A. Plaintiffs

18.    Plaintiff Mithun Alexander ("Alexander") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of California**. Between 2020 and 2021, Plaintiff purchased several types of the Plum Baby Foods from Safeway, Lucky, and Target stores in California to feed his child, including but not limited to: Stage 1: Sweet Potato; Stage 2: Apple & Carrot; Mighty Morning Bar Apple Cinnamon; Mighty Morning Snack Bar Blueberry Lemon; Little Teethers: Blueberry; Super Puffs: Blueberry with Purple Sweet Potato; and Super Puffs: Strawberry with Beet.

19.    Plaintiff believed he was feeding his child healthy, nutritious baby food. Plaintiff saw and relied upon the packaging of the Plum Baby Foods he purchased. Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals. If Plaintiff had known that the Plum Baby Foods he purchased contained heavy metals he would not have purchased or would not have paid as much for the Plum Baby Foods. On October 29, 2021, Plaintiff Alexander sent a letter to Defendants complying with Cal. Civ. Code § 1782(a).

20.    Plaintiff Elizabeth Austin ("Austin") is a natural person and is a citizen and resident of the **State of South Carolina** and previously was a citizen and resident of the **Commonwealth of Virginia**. Between 2014 and 2019, Plaintiff purchased several types of the Plum Baby Foods from Publix and Harris Teeter in **South Carolina** and Kroger in **Virginia** to feed her children, including but not limited to: Stage 1: Just Prunes; Stage 1: Just Mangos; Stage 1: Just Sweet Potato; Stage 2: Apple & Carrot; Super Puffs: Apple with Spinach; Super Puffs: Strawberry with Beet;

Super Puffs: Mango with Sweet Potato; Super Puffs: Blueberry with Purple Sweet Potato; and Little Teethers: Banana with Pumpkin.

21.     Plaintiff Austin believed she was feeding her children healthy, nutritious baby food. Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

22.     Plaintiff Emily Baccari ("Baccari") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **Commonwealth of Massachusetts**.  Between 2019 and 2021, Plaintiff purchased several types of the Plum Baby Foods from Amazon and Target in Massachusetts to feed her children, including but not limited to: Stage 1: Just Prunes;  Stage 3: Carrot, Spinach, Turkey, Corn Apple & Potato; Stage 3: Carrot, Sweet Potato, Corn, Pea & Chicken; Mighty 4: Sweet Potato, Banana, Passion Fruit & Greek Yogurt & Oat; and  Mighty 4: Banana, Kiwi, Spinach, Greek Yogurt & Barley.

23.     Plaintiff Baccari believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.   On March 10, 2021, Plaintiff Baccari sent a letter to Defendants complying with Mass. Gen. Laws ch. 93A, § 9(3).

24.     Plaintiff Alyssa Barb ("Barb") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of West Virginia**.  Between 2018 and 2021, Plaintiff purchased several types of the Plum Baby Foods from Walmart and Food Lion stores

in Winchester, **Virginia** and Romney, **West Virginia** to feed her children, including but not limited to: Stage 2: Pear, Purple Carrot & Blueberry; Super Puffs: Apple with Spinach; Super Puffs: Strawberry with Beet; Super Puffs: Mango with Sweet Potato; and Super Puffs: Blueberry with Purple Sweet Potato.

25.    Plaintiff Barb believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

26.    Plaintiff Amanda Boots ("Boots") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Minnesota**.  Between 2018 and 2019, Plaintiff purchased several types of the Plum Baby Foods from Walmart in Fairmont, Minnesota, to feed her children, including but not limited to:  Stage 2: Apple & Carrot; and Super Puffs: Strawberry with Beet.

27.    Plaintiff Boots believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

28.    Plaintiff Ana Butkus ("Butkus") is a natural person and is, and at all relevant times was citizen and resident of the **Commonwealth of Kentucky**. Between 2020 and 2021, Plaintiff purchased several types of the Plum Baby Foods from Meijer, Walmart, and Kroger stores in

Louisville and Grange, Kentucky to feed her child, including but not limited to: Stage 1: Just Sweet Potato; Stage 2: Apple & Carrot; and Super Puff: Strawberry with Beet.

29.     Plaintiff Butkus believed she was feeding her child healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

30.     Plaintiff Mayelin Carranza ("Carranza") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Nebraska**.  Between 2018 and 2021, Plaintiff purchased several types of the Plum Baby Foods from Walmart, Target, Whole Foods, and Natural Grocers stores in Nebraska to feed her children, including but not limited to: Stage 2: Pear, Spinach & Pea; Stage 2: Apple, Blackberry, Coconut Cream & Oat; Stage 2: Strawberry, Banana & Granola; Super Puffs: Apple with Spinach; Super Puffs: Strawberry with Beet; Super Puffs: Mango with Sweet Potato; Super Puffs: Blueberry with Purple Sweet Potato; Little Teethers: Blueberry; Little Teethers: Banana with Pumpkin; and Jammy Sammy: Peanut Butter & Strawberry Bar.

31.     Plaintiff Carranza believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

32.     Plaintiffs Richard and Stacey Chase ("Chase Plaintiffs") are natural persons and are, and at all times relevant hereto have been, citizens and residents of the **State of South**

**Carolina**.  From 2013 until February, 2021, Plaintiffs purchased several types of the Plum Baby Foods from various locations, including Amazon.com to feed their children, including but not limited to: Super Puffs: Apple with Spinach; and Super Puffs: Blueberry with Purple Sweet Potato.

33.    The Chase Plaintiffs believed they were feeding their children healthy, nutritious baby food.  Plaintiffs saw and relied upon the packaging of the Plum Baby Foods they purchased.  Plaintiffs made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiffs had known that the Plum Baby Foods they purchased contained heavy metals they would not have purchased or would not have paid as much for the Plum Baby Foods.

34.    Plaintiff Lakeisha Daigs ("Daigs") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Louisiana**.  Between 2019 and 2021, Plaintiff purchased several types of the Plum Baby Foods from Target, Walmart and Whole Foods stores in Louisiana to feed her child, including but not limited to: Stage 2: Apple, Raspberry, Spinach & Greek Yogurt; Mighty 4 Blends: Apple, Blackberry, Purple Carrot, Greek Yogurt & Oat; Mighty 4 Blends: Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; Mighty 4 Blends: Strawberry, Banana, Greek Yogurt, Kale, Amaranth & Oat; Mighty 4 Blends: Banana, Kiwi, Spinach, Green Yogurt & Barley; Super Puffs: Strawberry with Beet Cereal Snack; and Super Puffs: Blueberry with Purple Sweet Potato.

35.    Plaintiff Daigs believed she was feeding her child healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

36.     Plaintiff Jecoliah Farmer ("Farmer") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Ohio**.  Between August 2020 and February, 2021, Plaintiff purchased several types of the Plum Baby Foods from Target, Walmart, and Big Lots stores in Ohio to feed her child, including but not limited to: Stage 2: Apple, Blackberry, Coconut Cream & Oat; Stage 2: Apple & Carrot; Stage 2: Apple, Cauliflower & Leek; Stage 2: Apple, Raspberry, Spinach & Greek Yogurt; Stage 2: Pear, Purple Carrot, & Blueberry; Stage 2: Apple, Raspberry, Spinach & Greek Yogurt; Stage 2: Pea, Kiwi, Pear & Avocado; Stage 2:  Strawberry, Banana & Granola; Mighty 4 Blends: Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; Super Puffs: Apple with Spinach; and Super Puffs: Blueberry with Purple Sweet Potato.

37.     Plaintiff Farmer believed she was feeding her child healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

38.     Plaintiff Jillian Geffken ("Geffken") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of North Carolina**.  Between May 2016 to August 2019 and in January 2021, Plaintiff purchased several types of the Plum Baby Foods from Target, Food Lion, Lowes Food, and Walmart stores in North Carolina to feed her children, including but not limited to: Stage 1: Just Prunes; Stage 2: Pear, Spinach & Pea; and Stage 2: Pear, Purple Carrot & Blueberry.

39.     Plaintiff Geffken believed she was feeding her child healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff

made those purchases without knowledge that the Plum Baby Foods contained heavy metals. If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

40.    Plaintiff Ciara Beau Hall ("Hall") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of New York**. Between January 2020 and April 2020, Plaintiff purchased several types of the Plum Baby Foods from Target stores in the New York to feed her child, including but not limited to: Stage 1: Just Prunes; Stage 2: Pear, Spinach & Pea; Stage 2: Pear, Purple Carrot, & Blueberry; and Mighty 4 Blends: Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet.

41.    Plaintiff Hall believed she was feeding her child healthy, nutritious baby food. Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased. Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals. If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

42.    Plaintiff Kristin Hanna ("Hanna") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of South Carolina**. Between December 2019 and August 2020, Plaintiff purchased several types of the Plum Baby Foods from Walmart and KJ's Market in South Carolina to feed her child, including but not limited to: Stage 1: Just Sweet Potato; Stage 2: Pear, Purple Carrot, & Blueberry; Stage 2: Apple & Carrot; and Stage 3: Carrot, Sweet Potato, Corn, Pea & Chicken.

43.    Plaintiff Hanna believed she was feeding her child healthy, nutritious baby food. Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased. Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals. If

Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

44.      Plaintiff Heather Hyden ("Hyden") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Texas**.  Between 2019 and 2020, Plaintiff purchased several types of the Plum Baby Foods from Walmart and H-E-B Grocery stores in Texas to feed her children, including but not limited to: Little Teethers: Banana with Pumpkin; Little Teethers: Blueberry; and Little Teethers: Apple with Leafy Greens.

45.      Plaintiff Hyden believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.  On October 29, 2021, Plaintiff Hyden sent a letter to Defendants complying with Tex. Bus. & Com. Code Ann. § 17.505.

46.      Plaintiff Ahkilah Johnson ("Johnson") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of New Jersey**.  Between May 2020 and February 2021, Plaintiff purchased several types of the Plum Baby Foods from Amazon, Whole Foods, and Target in New Jersey to feed her child, including but not limited to: Super Puffs Mango with Sweet Potato; Super Puffs Blueberry with Purple Sweet Potato; Little Teethers: Apple with Leafy Greens; Little Teethers: Blueberry; Stage 1: Just Mangos; Stage 1: Just Prunes; Stage 2: Carrots, Beans, Spinach & Tomato; and Stage 2: Pumpkin,  Spinach, Chickpea & Broccoli.

47.      Plaintiff Johnson believed she was feeding her child healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff

made those purchases without knowledge that the Plum Baby Foods contained heavy metals. If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

48.    Plaintiff Mercedes Jones ("Jones") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Ohio**.    Between February 2021 and March 2021, Plaintiff purchased several types of the Plum Baby Foods from Walmart in Ohio to feed her children, including but not limited to: Stage 2: Pear, Purple Carrot, & Blueberry; Mighty 4 Blends: Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; and Mighty 4 Blends: Strawberry, Banana, Greek Yogurt, Kale, Amaranth & Oat.

49.    Plaintiff Jones believed she was feeding her child healthy, nutritious baby food. Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased. Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals. If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

50.    Plaintiff Karleen Kozaczka ("Kozaczka") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Rhode Island**.    Between 2018 until February, 2021, Plaintiff purchased several types of the Plum Baby Foods from Stop & Shop, Target, and Walmart in Rhode Island to feed her children, including but not limited to: Stage 2: Pear, Purple Carrot & Blueberry; Stage 2: Pear, Spinach & Pea; Stage 2: Apple, Spinach & Avocado; Stage 2: Strawberry, Banana & Granola; Mighty Morning Banana, Blueberry, Oat & Quinoa; Super Puffs: Apple with Spinach; Super Puffs: Blueberry with Purple Sweet Potato; Little Teethers: Banana with Pumpkin; Little Teethers: Blueberry; Mighty Nut Butter Bar: Almond Butter Bar; Mighty Nut Butter Bar: Peanut Butter Bar; Jammy Sammy: Peanut Butter & Grape Bar;

Jammy Sammy: Peanut Butter & Strawberry Bar; Jammy Sammy: Blueberry & Oatmeal Bar; Jammy Sammy: Apple Cinnamon & Oatmeal Bar; and Mighty Morning Bar: Apple Cinnamon Bar.

51.     Plaintiff Kozaczka believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

52.     Plaintiff April Lockhart ("Lockhart") is a natural person and is a citizen and resident of the **State of New Mexico** and previously was a citizen and resident of the **State of California**.  Between 2012 to 2019, Plaintiff purchased several types of the Plum Baby Foods from Target, Walmart, Albertsons and Whole Foods Market in the **State of California** and Target in the **State of New Mexico** to feed her children, including but not limited to:  Stage 1: Just Sweet Potato; Mighty4 Blends: Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; Mighty 4 Blends:  Strawberry, Banana, Greek Yogurt, Kale, Amaranth & Oat; Mighty Veggie: Spinach, Grape, Apple & Amaranth; and Mighty Veggie Carrot, Pear, Pomegranate & Oats.

53.     Plaintiff Lockhart believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.   On October 29, 2021, Plaintiff Lockhart sent a letter to Defendants complying with Cal. Civ. Code § 1782(a).

54.     Plaintiff Andrew Lohse ("Lohse") is a natural person and is a citizen and resident of the **State of South Dakota** and previously was a citizen and resident of the **State of**

17

**Michigan**.  Between 2013 and 2019, Plaintiff purchased several types of the Plum Baby Foods from Meijers Supermarket, Target, and Walmart stores in the **State of Michigan** to feed his children, including but not limited to:  Stage 1: Just Sweet Potato; Stage 1: Just Prunes; Stage 2: Pear, Purple Carrot, & Blueberry; Stage 2: Apple & Carrot; Stage 2: Apple, Spinach & Avocado; Stage 2: Apple, Raisin & Quinoa; Stage 2: Pea, Kiwi, Pear & Avocado; Stage 2: Pear, Spinach & Pea; Stage 2: Pear, Purple Carrot, & Blueberry; Stage 2:  Strawberry, Banana & Granola; Stage 3: Carrot, Spinach, Turkey, Corn Apple & Potato; Stage 3: Carrot, Sweet Potato, Corn, Pea, Chicken with Quinoa Cereal & Leek; Mighty 4 Blends: Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; and Mighty 4 Blends:  Strawberry, Banana, Greek Yogurt, Kale, Amaranth & Oat.

55.     Plaintiff Lohse believed he was feeding his children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods he purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods he purchased contained heavy metals he would not have purchased or would not have paid as much for the Plum Baby Foods.

56.     Plaintiff Natalie Williams ("Williams") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Missouri**.  Between December 2020 to May 2020, Plaintiff purchased several types of the Plum Baby Foods from Target and Walmart stores in Missouri to feed her child, including but not limited to:  Stage 1: Just Sweet Potato; Stage 2: Mango, Carrot & Coconut Cream; Stage 2: Apple, Spinach & Avocado; Stage 2:  Strawberry, Banana & Granola; Mighty 4 Blends: Apple, Blackberry, Purple Carrot, Green Yogurt & Oats; and Little Teethers: Banana with Pumpkin.

57.     Plaintiff Williams believed she was feeding her child healthy, nutritious baby

18

food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

58.    Plaintiff Lyrik Merlin ("Merlin") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of New Hampshire**.  Between November 2017 and sometime in 2020. Plaintiff purchased several types of the Plum Baby Foods from Target and CVS in New Hampshire and Shaw's in New Hampshire and the **State of Vermont** to feed her children, including but not limited to: Stage 1: Just Sweet Potato; Stage 2: Pea, Kiwi, Pear & Avocado; Stage 2: Pear, Spinach & Pea; Stage 2: Pumpkin, Spinach, Chick Pea, Broccoli; Stage 2: Pear, Purple Carrot, & Blueberry;  Stage 2:  Strawberry, Banana & Granola; Stage 3: Carrot, Spinach, Turkey, Corn, Apple & Potato; Super Puffs: Apple with Spinach; Super Puffs: Strawberry with Beet; Little Teethers: Blueberry; Little Teethers: Banana with Pumpkin; and Little Teethers: Apple with Leafy Greens.

59.    Plaintiff Merlin believed he was feeding his children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods he purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods he purchased contained heavy metals he would not have purchased or would not have paid as much for the Plum Baby Foods.

60.    Plaintiff Eileen Olmos ("Olmos") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of California**.  Between October 2017 and February 2021, Plaintiff purchased several types of the Plum Baby Foods from Amazon and Whole Foods stores in California to feed her grandchild, including but not limited to: Stage 1: Just Sweet

Potato; Stage 1: Just Mangos; Stage 2 Apple & Carrot; Stage 2: Apple, Spinach & Avocado; and Stage 2: Pear, Purple Carrot, & Blueberry.

61.     Plaintiff Olmos believed she was feeding her grandchild healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.  On October 29, 2021, Plaintiff Olmos sent a letter to Defendants complying with Cal. Civ. Code § 1782(a).

62.     Plaintiff Corinthea Pangelinan ("Pangelinan") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Arizona**.  Between 2017 and 2020, Plaintiff purchased several types of the Plum Baby Foods from Safeway, Target, and Walmart stores in Arizona to feed her children, including but not limited to**:** Stage 1 Just Sweet Potato; Stage 1: Just Mangos; Stage 1: Just Prunes; Stage 2: Apple & Carrot; Stage 2: Apple, Spinach & Avocado; Stage 2: Pea, Kiwi, Pear & Avocado; Stage 2: Pear, Spinach & Pea; Stage 2: Pear, Purple Carrot, & Blueberry; Stage 2:  Strawberry, Banana & Granola; Little Teethers: Banana with Pumpkin; Little Teethers: Blueberry; Little Teethers: Apple with Leafy Greens; Mighty Snack Bars: Blueberry; Mighty Snack Bars: Strawberry; Mighty Snack Bars: Pumpkin Banana; Mighty Nut Butter Bar: Almond Butter Bar; Mighty Nut Butter Bar: Peanut Butter Bar; Mighty Morning Bar: Apple Cinnamon Bar; Super Puffs: Strawberry with Beet; Super Puffs: Mango with Sweet Potato; Super Puffs: Apple with Spinach; and Super Puffs: Blueberry with Purple Sweet Potato.

63.     Plaintiff Pangelinan believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If

Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

64.    Plaintiff Cindy Pereira ("Pereira") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of California**.  Between 2020 and 2021, Plaintiff purchased several types of the Plum Baby Foods from Target stores in California to feed her child, including but not limited to: Stage 2: Apple & Carrot; Stage 2: Pear, Spinach & Pea; and Stage 2: Pear, Purple Carrot & Blueberry.

65.    Plaintiff Pereira believed she was feeding her child healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.  On October 29, 2021, Plaintiff Pereira sent a letter to Defendants complying with Cal. Civ. Code § 1782(a).

66.    Plaintiff Carrie Reagan ("Reagan") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Tennessee**.  Between October, 2020 and January, 2021, Plaintiff purchased several types of the Plum Baby Foods from Amazon while in Tennessee to feed her child, including but not limited to: Stage 1: Just Sweet Potato; Stage 1: Just Mangos; Stage 2: Apple, Raspberry, Spinach & Greek Yogurt; Stage 2: Apple, Spinach & Avocado; and Mighty 4 Blends: Mango & Pineapple, White Bean, Butternut Squash, Oats.

67.    Plaintiff Reagan believed she was feeding her child healthy, nutritious baby food. Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If

Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

68.     Plaintiff Amanda Rogers ("Rogers") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Washington**. Between 2015 and 2020, Plaintiff purchased several types of the Plum Baby Foods from Amazon, Walmart, Safeway, Albertson, Haggen Food & Pharmacy in Washington to feed her children, including but not limited to: Stage 1: Just Prunes; Stage 1: Just Sweet Potato; Stage 2: Pear, Purple Carrot & Blueberry; Stage 2: Apple, Spinach & Avocado;  Stage 2: Apple & Carrot; Raisin & Quinoa;  Stage 3: Carrot, Chickpea, Pea, Beef & Tomato; Stage 3: Carrot, Sweet Potato, Corn, Pea & Chicken; Stage 3: Carrot, Spinach, Turkey, Corn, Apple & Potato; Little Teethers Apple with Leafy Greens; Mighty 4 Blends: Apple, Blackberry, Purple Carrot, Green Yogurt & Oats; Mighty 4 Blends: Pear, Cherry, Blackberry, Strawberry, Black Bean, Spinach & Oats; Mighty 4 Blends: Banana, Kiwi, Spinach, Greek Yogurt & Barley; Mighty 4 Blends: Banana, Peach, Pumpkin, Carrot, Greek Yogurt & Oat; Mighty 4 Blends: Strawberry, Banana, Greek Yogurt, Kale, Amaranth & Oat; Mighty 4 Blends: Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; Mighty Morning: Banana, Blueberry, Oat & Quinoa; Mighty Snack Bars: Pumpkin Banana; Mighty Snack Bars: Strawberry; Little Teethers: Banana with Pumpkin; Little Teethers: Apple with Leafy Greens; Super Puffs: Strawberry with Beet; Super Puffs: Mango with Sweet Potato; Super Puffs: Blueberry with Purple Sweet Potato; and Super Puffs: Apple & Spinach.

69.     Plaintiff Rogers believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would

not have purchased or would not have paid as much for the Plum Baby Foods.

70.     Plaintiff Erin Smid ("Smid") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Illinois**.  Between December 29, 2017 and January 13, 2021, Plaintiff Smid purchased several types of Plum Baby Foods from Amazon.com to feed her children, including but not limited to:  Stage 1: Just Prunes;  Stage 1: Sweet Potato;  Stage 1: Just Mangos; Super Puffs Variety Pack; Stage 2: Pear, Purple Carrot & Blueberry;  Stage 2: Pear, Spinach & Pea; Stage 2: Pumpkin, Spinach, Chickpea & Broccoli;  Mighty 4 Blends: Pear, Cherry, Blackberry, Strawberry, Black Bean Spinach & Oat; Mighty Veggie: Spinach, Grape, Apple, & Amaranth;  Mighty Veggie: Carrot, Pear, Pomegranate & Oats; Mighty Morning: Banana, Blueberry, Oat & Quinoa Pouch; and Mighty Protein: Mango, Banana, White Bean, Sunflower Seed Butter & Chia.

71.     Plaintiff Smid believed she was feeding her children healthy, nutritious baby food. Plaintiff Smid saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff Smid had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

72.     Plaintiff Edwina Smith ("Smith") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of New Jersey**.  Between July, 2019 and February, 2021, Plaintiff purchased several types of the Plum Baby Foods from Walmart and CVS stores in New Jersey to feed her children, including but not limited to:  Stage 2 : Pear, Purple Carrot & Blueberry;  Stage  2: Pear, Spinach  &  Pea; Stage  2:  Pumpkin,  Spinach, Chickpea & Broccoli;  Super Puffs: Strawberry with Beet;  Super Puffs: Mango with Sweet Potato; Little Teethers: Apple with Leafy Greens; and Little Teethers:  Banana with Pumpkin.

23

73.    Plaintiff Smith believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

74.    Plaintiff Hibatunoor Syed ("Syed") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **Commonwealth of Pennsylvania**. Between 2017 and 2020 Plaintiff purchased several types of the Plum Baby Foods from Walmart and Target stores in Pennsylvania to feed her children, including but not limited to:  Stage 2: Pear, Purple Carrot, & Blueberry;  Stage 2: Pear, Spinach & Pea; Stage 2: Apple, Raspberry, Spinach & Greek Yogurt; Mighty 4 Blends: Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; Mighty 4 Blends: Apple, Blackberry, Purple Carrot, Green Yogurt & Oats; Mighty 4 Banana, Kiwi, Spinach, Greek Yogurt & Barley; Mighty 4 Blends:  Strawberry, Banana, Greek Yogurt, Kale, Amaranth & Oat; Mighty Morning Banana, Blackberry, Oat, Quinoa;  and 8 packs of Mighty 4 Variety Flavors.

75.    Plaintiff Syed believed she was feeding her children healthy, nutritious baby food. Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased. Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals. If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

76.    Plaintiff Alexander Van Den Essen ("Van Den Essen") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of New York**. In 2020, Plaintiff purchased several types of the Plum Baby Foods from Walmart and Target stores in

New York to feed his child, including but not limited to: Mighty 4 Blends:  Strawberry, Banana, Greek Yogurt, Kale, Oat & Amaranth.

77.    Plaintiff Van Den Essen believed he was feeding his child healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods he purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods he purchased contained heavy metals he would not have purchased or would not have paid as much for the Plum Baby Foods.

78.    Plaintiff Fredricka Waters ("Waters") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Florida**.  During 2021, Plaintiff purchased several types of the Plum Baby Foods from Walmart in Florida to feed her children, including but not limited to Stage 1: Just Mangos; Stage 1: Just Prunes; Mighty 4 Blends: Pear, Cherry, Blackberry, Strawberry, Black Bean, Spinach & Oat Pouch; Mighty Morning: Banana, Blueberry, Oat & Quinoa; Little Teethers Banana with Pumpkin; Super Puff: Strawberry with Beet; and Super Puffs: Blueberry with Purple Sweet Potato.

79.    Plaintiff Waters believed she was feeding her children healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

80.    Plaintiff Courtney Whiteway ("Whiteway") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the **State of Colorado**. Between 2017 and 2019, Plaintiff purchased several types of the Plum Baby Foods from Costco, Target, Amazon, and Sprouts Farmers Market stores in Colorado to feed her child, including but not limited to: Stage 1:

Just Sweet Potato; Stage 1: Just Prunes; Stage 2: Apple & Carrot; Stage 2: Pear, Purple Carrot & Blueberry; Stage 2: Pear, Spinach & Pea; Stage 2: Strawberry, Banana & Granola; and Stage 2: Mango, Carrot & Coconut Cream.

81.    Plaintiff Whiteway believed she was feeding her child healthy, nutritious baby food.  Plaintiff saw and relied upon the packaging of the Plum Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Plum Baby Foods contained heavy metals.  If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.

**B.  Defendants**

82.    Campbell is a New Jersey corporation with its principal place of business located in Camden, New Jersey.

83.    At all relevant times, Plum, PBC was an indirect, wholly owned corporate subsidiary of Campbell.  Its corporate headquarters was in Camden, New Jersey.

84.    Defendants have formulated, developed, manufactured, labelled, distributed, marketed, advertised, and sold Plum Baby Foods under the Plum Organics name throughout the United States, including in this District. They have done so continuously throughout the Class Period (February 5, 2015 to present). Throughout the Class Period, Defendants knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for Plum Baby Foods that contained heavy metals.  Further, Defendants did not disclose the presence of heavy metals in the Plum Baby Foods. Defendants were also responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing of both the ingredients and finished Plum Baby Foods.

## JURISDICTION AND VENUE

85.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a state other than that of Defendants, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

86.    This Court has personal jurisdiction over Defendants because Defendants regularly sell and market products and conduct business in this District and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Plum Baby Foods.

87.    Venue is proper in this Court because the acts and omissions giving rise to this lawsuit took place in this District, Campbell maintains its principal place of business and business operations within the District and Plum, PBC represents on its packaging that the Plum Baby Foods are distributed from Camden, New Jersey.

## FACTUAL ALLEGATIONS

**A.    Defendants' Business Activity in New Jersey.**

88.    Defendant Campbell is a New Jersey Corporation.  Its corporate headquarters and principal place of business is in Camden, New Jersey.

89.     At all relevant times, Plum, PBC was an indirect, wholly owned corporate subsidiary of Campbell.  Its corporate headquarters was in Camden, New Jersey.

90.    Campbell acquired Plum, Inc. in 2013.  After the acquisition, Plum, Inc. was converted pursuant to Delaware law, into a public benefit corporation and renamed Plum, PBC ("Plum"). At the time of acquisition, Plum maintained officed and its principal place of business in Emeryville, California.  Subsequent to the acquisition, Campbell transferred all of Plum's business operations to Campbell's corporate headquarters in Camden, New Jersey. The transfer of the

entirety of Plum's business operation to New Jersey was completed in 2018.  After that time, Plum's principal place of business was in Camden, New Jersey, and it maintained no employees, headquarters, offices, or corporate operations in California.

91.    At all relevant times, all of Plum's officers and directors were located in the Plum/Campbell corporate headquarters in New Jersey. These senior executives and corporate officers directed oversaw and controlled all of Plum's core business functions from New Jersey including company-wide finance, human resources, information technology, and payroll, as well as decisions relating to the advertising, manufacturing, and selling of Plum Baby Foods.

92.    On March 31, 2021 (after the initial complaint against Defendants was filed), Sun-Maid Growers of California ("Sun-Maid") announced it would acquire Plum, PBC.  The sale was completed on May 3, 2021. Campbell agreed to indemnify Sun-Maid for claims against Plum alleging heavy metals in the products manufactured or sold on or prior to May 2, 2021.

93.    During Campbell's ownership of Plum, PBC, it assumed in New Jersey a supervisory role over Plum, PBC's operations, including, but not limited to, controlling and directing its production, manufacturing, advertising, promotion, marketing, and testing of baby foods sold under the Plum Organics brand.  For example, as discussed in further details below, when the House Subcommittee investigated the level of heavy metals in Plum Organics baby foods, the House Subcommittee sought information *from Campbell*.  Similarly, when (limited) information was produced to the House Subcommittee concerning Plum Organics baby foods, it was produced *by Campbell*.

94.    In short, New Jersey is the nerve center of Defendants' business activities related to the conduct alleged herein.

28

**B.    Defendants Falsely Represent and Warrant that Plum Baby Foods Are, Among Other Things, Healthy and Safe for Consumption by Infants and Children and Fail to Disclose That Plum Baby Foods Contain Heavy Metals**

95.    Campbell acquired Plum, PBC in order to gain entry into the "Rapidly-Growing Premium Baby Food Category."[12]  Defendants' advertising strategy is focused on promoting Plum Baby Foods as organic and free from unnatural ingredients in order to justify placement of their products within the premium category of baby food.  This is not surprising given that, for example, organic baby food was valued at $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[13]  The incredible rise in consumer demand for organic baby food is "driven by the growing awareness among consumers to limit that baby's exposure to the harmful chemicals used in conventional food production and the awareness of the benefits of organic products."[14]

96.    Defendants' advertised mission is to "nourish little ones with the very best food from the very first bite."[15]  Defendants advise parents to follow the "Keep it Simple" approach in feeding their children: "[U]se organic, non-GMO, whole and simple ingredients whenever possible."[16]

97.    Defendants also claim their "top priority" is "to serve children healthy, nutritious

---

[12]  Press Release, *Campbell to Acquire Plum Organics, a Leading Premium, Organic Kids Nutrition Company* (May 23, 2013), available at https://www.campbellsoupcompany.com/newsroom/press-releases/campbell-to-acquire-plum-organics-a-leading-premium-organic-kids-nutrition-company/ (last visited Nov. 1, 2021).

[13]  *North America Organic Baby Food Market Expected to Reach a Value of $3.32 Billion by 2024 with a CAGR of 9.6%* (Jan. 20, 2020), available at https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-Baby-Food-MarketExpected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---ResearchAndMarkets.com (last visited Nov. 1, 2021).

[14]  *Organic Baby Food Market- Growth, Trends, COVID-19 Impact, and Forecast*, available at https://www.mordorintelligence.com/industry-reports/organic-baby-food-market (last visited Nov. 1, 2021).

[15]  Plum Organics Mission Highlights, Fiscal Year 2018, available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last visited Nov. 1, 2021).

[16]  *Mission*, Plum Organics, https://www.plumorganics.com/mission/ (last visited Nov. 1, 2021).

food made from the best ingredients" and that Plum Baby Foods "are safe . . . to eat!"[17]  This is because, as Defendants acknowledge on the Plum Organics website, "food sparks baby's growth, informs taste preferences and impacts overall [child] development."[18]

98.     Defendants repeatedly tout on their packaging their commitment to and use of organic and non-GMO ingredients in Plum Baby Foods.





99.     Defendants tout their commitment to organic, healthy food: the "very best food."[19]

---

[17] *FAQs*, Plum Organics, https://www.plumorganics.com/faqs/ (last visited Nov. 1, 2021).
[18] *First 1000 Days*, Plum Organics, https://www.plumorganics.com/first-1000-days/ (last visited Nov. 1, 2021).
[19] Plum Organics Mission Highlights, Fiscal Year 2018, available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last visited Nov. 1, 2021).

100.    Defendants also claim to have a "comprehensive quality and food safety program that encompasses an ingredient testing program for new suppliers which includes testing for heavy metals."[20]

101.    Defendants state they have a "protocol for evaluating heavy metals in products" and look to guidance from "leading health and regulatory bodies." However, they fail to describe their protocol or identify the "health and regulatory bodies." [21]

102.    Additionally, Defendants claim, "Any level [of heavy metals] detected in Plum's [products] are below those allowed by applicable government standards." However, in direct contradiction to that claim, Defendants state, "there is no federal standard on heavy metals in baby food... [and a] lack of specific FDA guidance on baby food." [22]

103.    Defendants claim that they conduct ingredient testing in order to "get . . . ahead of any potential issues before it makes its way into a product . . . just like when you make a recipe at home – you want to know everything that's going into the recipe."[23]

104.    Where Defendants advertise, package, and market Plum Baby Foods as premium

---

[20] *FAQs*, Plum Organics, https://www.plumorganics.com/faqs/ (last visited Nov. 1, 2021).
[21] *Id.*
[22] *Id.*
[23] *Id*.

baby food products that are healthy, nutritious, organic, non-GMO, "made from the best ingredients," and safe for consumption by infants and children and do not disclose the presence of heavy metals in Plum Baby Foods, Defendants had a duty to ensure that the statements and the message portrayed by the packaging's imagery were true and not misleading. Defendants knew or should have known Plum Baby Foods included heavy metals and that over time, these toxins can accumulate and remain in infants' and children's bodies, to their detriment.

105.    These representations and warranties were intended to and did induce Plaintiffs and those similarly situated to trust and rely on Defendants and purchase Plum Baby Foods.  Defendants intentionally omitted the presence of heavy metals in order to induce and mislead reasonable consumers to purchase Plum Baby Foods.

106.    Plaintiffs and other similarly situated consumers, having read and relied on such representations and warranties, were induced to believe that Plum Baby Foods were premium baby food products that were healthy, nutritious, organic, non-GMO, "made from the best ingredients," and safe for consumption by infants and children, and purchased them as a result.  Notably, none of Defendants' packaging or marketing materials warned that Plum Baby Foods contained heavy metals that could harm the health and physiological and neurocognitive development, including brain development, of infants and children consuming such baby food products.

107.    Defendants falsely represented and warranted the contents, ingredients, safety, quality, and nutritional value of Plum Baby Foods because Defendants knew that Plaintiffs and similarly situated consumers would never have purchased the Plum Baby Foods to be fed to their children if truthful information had been provided. At all times, Defendants had a duty to provide only accurate and truthful representations, warranties, and information about Plum Baby Foods, and the aforesaid conduct breached that duty.  As a result, Plaintiffs and those similarly situated

were economically harmed.

**C.    The House Subcommittee Concludes That Plum Baby Foods Contain Unsafe Levels of Heavy Metals**

**<u>The House Report</u>**

108.    The House Report concluded that baby food products contained unsafe levels of heavy metals including arsenic, lead, cadmium, and mercury."[24]

109.    The House Report describes the background and genesis of the House Subcommittee's investigation.  On November 6, 2019, having been made aware of reports of high levels of heavy metals in baby foods, the House Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food products in the United States, including Campbell (as the parent of Plum, PBC).[25]

110.    Four of the companies responded to the House Subcommittee's requests, while three of the companies, including Campbell, failed to cooperate (at least initially).[26]

111.    The House Subcommittee expressed "grave concerns about baby food products manufactured by…Campbell (Plum Organics)."   Specifically, the House Subcommittee was "greatly concerned that Campbell's lack of cooperation might obscure the presence of even higher levels of heavy metals in their baby food products, compared to their competitors' products."[27]  On information and belief, Defendants initially failed and refused to fully cooperate with the House Subcommittee investigation because they did not want to disclose the unsafe levels of heavy metals in Plum Baby Foods, which would have demonstrated the falsity of its representations and

---

[24] *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last visited Nov. 1, 2021).

[25] House Report, at 2.

[26] *Id.*

[27] *Id.*, at 5.

warranties with regard to the safety, ingredients, and nutritional value of Plum Baby Foods.

112.    On information and belief, Defendants' initial refusal to cooperate with a government investigation intended to protect the safety and development of babies and children was deliberate and served to protect its profits and financial priorities at the expense of the safety and health of babies and children.

113.    The House Subcommittee stated that "Campbell's evasion is concerning, as even limited independent testing has revealed the presence of heavy metals in its baby food."[28] This was a reference to outside testing that revealed unsafe levels of heavy metals in Plum Baby Foods.

114.    The House Report specifically cited to the HBBF Report, discussed further below, which detailed the findings of testing conducted by an independent organization focused on the health and safety of babies and children.  The HBBF Report described the results of its testing of Plum Organics baby food products and found the presence of arsenic, lead, cadmium, and mercury, which was unsafe and unfit for consumption by babies and children.

115.    The House Report emphasized the results in the HBBF Report, which found that Defendants knowingly sold baby foods to United States consumers that contained high levels of the heavy metals arsenic, lead, mercury, and cadmium.[29] By knowingly selling baby foods with unsafe amounts of these heavy metals to United States consumers, Defendants knowingly exposed millions of children to substances proven to cause permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.[30]

116.    The House Report also found that Defendants only tested individual ingredients, and not its final products. According to the House Subcommittee, this policy "recklessly endangers

---

[28] *Id*., at 45.

[29] *Id*.

[30] *Id*., at 2.

34

babies and children and prevents [Plum] from ever knowing the full extent of the danger presented by [Plum's] products."[31]

117.    In response to the House Report, Defendants made the following statement to the publication Food Navigator: "Campbell has conducted testing on every Plum Organics products on the market to ensure none exceed acceptable levels of arsenic, lead, cadmium, or mercury."[32] Notably, this response provided no guidance as to what Campbell believes are "acceptable levels" of heavy metals in their Plum Baby Foods.

**The Supplemental House Report**

118.    On September 29, the House Subcommittee released the Supplemental House Report, which confirmed that high levels of the following heavy metals exist in Plum Baby Foods:

> Arsenic: 100% of Plum Organics Super Puff rice-based products tested between 2017 and 2019 contained in excess of 200 ppb arsenic. The average Super Puff product had 233.74 ppb arsenic, including 79 ppb inorganic arsenic. These products contained up to 470 ppb arsenic, and up to 225 ppb inorganic arsenic. For comparison, the maximum level of inorganic arsenic that FDA allows in bottled water is 10 ppb, and the Baby Food Safety Act would impose a maximum level of 15 ppb inorganic arsenic for infant cereals.
>
> Lead: 54.5% of Plum Organics products exceed 5 ppb lead, the maximum amount FDA allows in bottled water.
>
> Cadmium: 38.3% of Plum Organics products exceed 5 ppb cadmium, the maximum amount FDA allows in bottled water.[33]

119.    With regard to the Plum Organics "Super Puffs," the Supplemental House Report states that in Defendants' internal testing between October 28, 2017 and the present, "[e]very test

---

[31] *Id.*, at 56-57.

[32] Elaine Watson, *Baby food brands defend protocols as congressional report alleges 'highly dangerous' levels of heavy metals in infant foods; expects lawsuits, says attorney*, FOOD NAVIGATOR-USA (Feb. 5, 2021), https://www.foodnavigator-usa.com/Article/2021/02/05/Baby-food-brands-defend-protocols-as-congressional-report-alleges-highly-dangerous-levels-of-heavy-metals (last visited Nov. 1, 2021).

[33] Supplemental House Report, at 3-4.

returned high levels of total arsenic, each in excess of 200 ppb arsenic, including six that tested over 400 ppb (470, 468, 462, 456, 422, and 410 ppb)."  Defendants' testing also confirmed that the average amount of "inorganic arsenic in those products was 79 ppb inorganic arsenic, nearly eight times the amount FDA allows in bottled water."[34]

120.    The House Subcommittee's investigation also "found that the majority of Plum's baby food products—54.5%—contain in excess of 5 ppb lead, with 25.8% of products containing over 10 ppb lead," and "[c]ertain Plum products tested up to 73 ppb lead."[35]

121.    Finally, the House Subcommittee found that "Plum sold many products with much higher cadmium contents [then the 5 ppb limit in drinking water]: 38.3% of Plum products tested—80 of 209 products—exceeded 5 ppb cadmium," with "[s]even of the products tested exceed[ing] 25 ppb" and "[o]ne product contain[ing] 43 ppb."[36]

### D. Independent Testing Supports That Plum Baby Foods Contain Heavy Metals, Which Have Significant Negative Effects on Child Development

122.    The following products manufactured by Defendants were tested by HBBF and found to contain heavy metals at the following levels:[37]

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) |
|---|---|---|---|---|---|
| Gentle Organic Infant Formula with Iron, Milk-Based Powder | 4.6 | 0 | 4.7 | <1.1 | <0.278 |
| Stage 1 Pouch (Just Sweet Potato) | 3.1 | 0 | 5.6 | 2.3 | <0.142 |
| Stage 1 Pouch (Just Sweet Peaches) | 7.2 | 0 | 0.9 | <0.5 | <0.139 |

---

[34] *Id.*, at 19-20.
[35] *Id.*
[36] *Id.*, at 21
[37] The chart represents the levels of heavy metals in Defendants' products included in the HBBF Report.

| | | | | |
|---|---|---|---|---|
| Stage 1 Pouch (Just Sweet Prunes) | 7.6 | 0 | 2.5 | <0.5 | 0.194 |
| Stage 2 Pouch (Pumpkin Banana Papaya Cardamom) | 2.4 | 0 | 1.4 | 2.4 | <0.139 |
| Stage 2 Pouch (Apple, Raisin, & Quinoa) | 5.6 | 0 | 2.2 | 1.9 | 0.145 |
| Little Teethers Multigrain Teething Wafers (Banana with Pumpkin) | 49.9 | 0 | 1.4 | 6.3 | 0.726 |
| Mighty Morning Snack Bar (Blueberry Lemon) | 40 | 39 | 3.4 | 24.3 | <0.137 |

123.    Additionally, Consumer Reports conducted testing of selected samples of baby food products sold by Defendants and other baby food manufacturers. Every product had measurable levels of at least cadmium, arsenic, or lead.  According to Consumer Reports, "[a]bout two-thirds (68 percent) had worrisome levels of at least one heavy metal" and "[o]rganic foods were as likely to contain heavy metals as conventional foods."[38]

124.    Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their children. This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

125.    One example of harmful substances parents want to avoid exposing their children to are the heavy metals arsenic, lead, mercury, and cadmium. These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure of function of the nervous system."[39] Exposure to these neurotoxins have been shown to "diminish quality of life, reduce

---

[38] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last visited Nov.1, 2021).

[39] *Neurotoxin*, https://www.britannica.com/science/neurotoxin (last visited Nov.1, 2021).

academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[40]

126.    Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[41] Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[42] These developmental conditions can be caused by exposure to even trace amounts of these substances.[43]

127.    For these reasons, organizations such as the FDA and WHO have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[44] Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[45]

128.    According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, "No level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."[46]

---

[40] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), https://www.healthybabyfood.org/sites/ (last visited Nov. 1, 2021). healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (accessed Nov. 1, 2021); HBBF Report, at 13.
[41] HBBF Report, at 1.
[42] HBBF Report, at 6.
[43] HBBF Report, at 1.
[44] House Report, at 2.
[45] House Report, at 3.
[46] Some Baby Food May Contain Toxic Metals, U.S. Reports; available at

129.    Because heavy metals accumulate in the body, including in the kidneys and other internal organs, the risk they pose grows over time and can remain in one's body for years.[47]  Due to their smaller physical size and still-developing brain and organs, infants and toddlers are particularly susceptible to the toxic effects of heavy metals because "[t]hey also absorb more of the heavy metals that get into their bodies than adults do."[48]

130.    Because heavy metals can bioaccumulate in the body, even regular consumption of small amounts can increase the risk of various health issues, including the risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes.[49]

131.    Exposure to heavy metals, even in small amounts, can lead to life-long effects. According to Victor Villarreal, Ph.D., Assistant Professor in the Department of Educational Psychology at the University of Texas at San Antonio who has studied the effects of heavy metals on childhood development, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[50]

**Arsenic**

132.    The heavy metal arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[51] The effects of arsenic exposure are irreversible and in addition to the

---

https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html?.?mc=aud_dev&ad-keywords=auddevgate&gclid=CjwKCAjwoP6LBhBlEiwAvCcthLsjFNUpcAIGQNXQp1J5y77uMg9TJwA5mlVCYeiYkxiuadXD0IDwHxoC0xkQAvD_BwE&gclsrc=aw.ds (last visited Nov. 1, 2021).

[47] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last visited Nov. 1, 2021).

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] HBBF Report, at 13.

cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[52]

133.    Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and FDA to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has set a limit of 10 parts per billion ("PPB") for apple juice, and the EPA has set the same limit for drinking water. Additionally, the FDA has set a limit of 10 parts per billion for bottled water[53] and is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[54] The FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[55]

### Lead

134.    Exposure to the heavy metal lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal

---

[52] House Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013), https://pubmed.ncbi.nlm.nih.gov/23570911/).

[53] Laura Reiley, *New Report Finds Heavy metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last visited Nov. 1, 2021).

[54] FDA, *Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants* (Aug. 2020), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-inorganic-arsenic-rice-cereals-infants (last visited Nov. 1, 2021).

[55] *See, e.g.,* "Federal judge enters consent decree against Washington state judice processor (June 15, 2021), https://www.fda.gov/news-events/press-announcements/federal-judge-enters-consent-decree-against-washington-state-juice-processor (last visited Nov. 1, 2021).

growth."[56] Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[57]

135.    For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[58] Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[59]

136.    The proven negative effects of lead exposure have caused several health organizations—including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb[60] and "[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[61]

**Mercury**

137.    The WHO warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[62]

138.    It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their brains and kidneys are still developing[63] and that exposure to even

---

[56] House Report, at 11.
[57] HBBF Report, at 13.
[58] HBBF Report, at 13.
[59] House Report, at 12 (citing Gabriele Donzelli *et al.*, *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019), http://www.mdpi.com/1660-4601/16/3/382/htm).
[60] Laura Reiley, *New Report Finds Heavy metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last visited Nov. 1, 2021).
[61] *Id.*
[62] *Id.*
[63] Missouri Dept. of Nat. Resources, *Mercury,* https://health.mo.gov/living/environment/mercury/ (last visited Nov. 1, 2021).

a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[64] For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention span and cause learning disabilities."[65]

139.    Exposure to mercury has also been linked to higher risk of lower IQ scores and intellectual disability in children[66] and mercury exposure at two and three years of age has been positively associated with autistic behaviors among preschool-age children.[67]

140.    The EPA has set a maximum mercury level in drinking water to 2 ppb.[68]

**Cadmium**

141.    The heavy metal cadmium is considered a neurotoxin. Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting and diarrhea, and sometimes death. Eating lower levels of cadmium over a long period can lead to kidney damage and can cause bones to become fragile and break easily. Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers. The US Department of Health and Human Services ("HHS") and the EPA, both consider cadmium and cadmium compounds human carcinogens (can cause cancer).[69]

142.    Children with higher cadmium levels are three times more likely to have learning

---

[64] *Mercury and health*, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%E2%80%93%20even%20small,%2C%20kidneys%2C%20skin%20and%20eyes (last visited Nov. 1, 2021).

[65] Missouri Dept. of Nat. Resources, *Mercury*, , https://health.mo.gov/living/environment/mercury/ (last visited Nov. 1, 2021).

[66] HBBF Report, at 14.

[67] House Report, at 12-3.

[68] House Report, at 32.

[69] NYS Dept. of Health, *Cadmium in Children's Jewelry*, https://www.health.ny.gov/environmental/chemicals/cadmium/cadmium_jewelry.htm#:~:text=Children%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry (last visited Nov. 1, 2021)

disabilities and participate in special education, according to a new study led by Harvard University researchers.[70]

143.    The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[71]

**E.    Defendants Knew of and Failed to Disclose the Presence of Heavy Metal Contamination in Their Plum Baby Foods**

144.    Despite the known and knowable risks of exposure to these heavy metals, Defendants negligently, recklessly, and/or knowingly sold Plum Baby Foods containing heavy metals.  Further, Defendants negligently, recklessly, and/or knowingly failed to disclose to Plaintiffs and those similarly situated Plum Baby Foods that contain heavy metals.

145.    At all times relevant, Defendants knew or should have known the contents of Plum Baby Foods. Defendants also knew or should have known the contents of ingredients supplied by suppliers for inclusion in Plum Baby Foods, including the presence of heavy metals.

146.    Defendants knew or should have known of the presence of heavy metals in Plum Baby Foods.  Defendants recklessly and with willful and wanton disregard of the rights and health of the those who purchased and consumed Plum Baby Foods, disregarded the unreasonable risks created by the presence of heavy metals in its baby food, and failed to adequately inform or warn Plaintiffs and those similarly situated.

147.    Defendants knew or should have known that heavy metals pose health risks to infants and children.

---

[70] Marla Cone, *Is Cadmium as Dangerous for Children as Lead?*, SCIENTIFIC AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/ (last visited Nov. 1, 2021).
[71] House Report, at 29.

148.    In October, 2019, the Healthy Babies Bright Futures nonprofit organization notified Defendants of the presence of unacceptable, dangerous levels of heavy metals in their baby food products.[72] Even after being notified in this manner, Defendants failed to take adequate measures to sell baby food products without unsafe levels of heavy metals, or to adequately warn consumers.

149.    Despite Defendants' knowledge of heavy metal contamination in Plum Baby Foods, Defendants failed to take action to change or adjust the design, manufacturing, or marketing of Plum Baby Foods, including the failure to inform Plaintiffs and other similarly situated consumers about the heavy metal contamination.

150.    Defendants knew they were not sufficiently and consistently monitoring or testing Plum Baby Foods or their ingredients for heavy metals.  Defendants knew, yet failed to disclose, their lack of regular testing, monitoring, and knowledge that Plum Baby Foods and/or ingredients used in Plum Baby Foods included undisclosed levels of heavy metals.

151.    Defendants' marketing of Plum Baby Foods without any warning indicating that these products contain heavy metals, or that these toxins can accumulate in a child over time to the point where poisoning, injury, and/or disease can occur, was reckless, and undertaken with willful and wanton disregard of Plaintiffs and those similarly situated.

152.    Defendants' misrepresentations and untrue warranties regarding the safety, ingredients, and nutritional value of Plum Baby Foods, as well as its omissions and failure to warn about the presence of heavy metals were material, false, misleading, and intended to be and were reasonably likely to deceive the public, including Plaintiffs and those similarly situated. This is true especially considering Defendants' long-standing marketing of Plum Baby Foods as premium baby

---

[72] http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf (last visited Nov. 1, 2021).

food products that are healthy, nutritious, organic, non-GMO, "made from the best ingredients," and safe for consumption by infants and children.

153.    These representations in Defendants' marketing and labeling were deceptive, affirmatively representing an inaccurate list of ingredients and safety and nutrition information and failing to disclose the presence of heavy metals in Plum Baby Foods. Reasonable consumers, including Plaintiffs and those similarly situated, were unaware of the presence of elevated levels of heavy metals in Plum Baby Foods, and would not have purchased Plum Baby Foods if they had known the true list of ingredients including the heavy metals.  Defendants' above-referenced statements, representations, warranties, and omissions were false, misleading, and intended to deceive the public, including Plaintiffs and those similarly situated.  Plaintiffs and those similarly situated were deceived by the marketing images representing and warranting that Plum Baby Foods are premium baby food products that are healthy, nutritious, organic, non-GMO, safe for consumption by infants and children, high-quality, contain only the listed ingredients, and not disclosing the inclusion of heavy metals, such as arsenic, cadmium, lead, and mercury. Defendants also knew but disregarded the fact that Plaintiffs and those similarly situated would deem the presence of heavy metals in Plum Baby Foods to be material in selecting baby food products for purchase and to be fed to their children.

154.    Defendants also knew or should have known that Plaintiffs and similarly situated consumers would be feeding Plum Baby Foods to their children regularly, including multiple times each day, and that this repeated ingestion would cause and exacerbate the build-up of the heavy metals in their children.

155.    Reasonable consumers must and do rely on Defendants to disclose what Plum Baby Foods contain or to refrain from selling Plum Baby Foods with heavy metals.  Based on the

impression given by the packaging, no reasonable consumer could expect or understand that Plum Baby Foods contained heavy metals.

156.    Defendants' representations, warranties, and omissions are material and render Plum Baby Foods packaging deceptive as reasonable consumers believe the Baby Foods are premium baby food products that are high quality, healthy, nutritious, organic, non-GMO, safe for consumption by infants and children, and are free of heavy metals. Thus, Defendants' representations, warranties, and omissions are reasonably likely to deceive reasonable consumers in their purchasing decisions, such as Plaintiffs. This is true especially considering the long-standing campaign by Defendants to market the Plum Baby Foods as premium baby food products that are healthy, nutritious, organic, non-GMO, made from the best ingredients, and safe for consumption by infants and children to induce consumers, such as Plaintiffs, to purchase the products.

157.    As a result of the aforesaid wrongdoing, Defendants have generated substantial sales and profits from the sale of Plum Baby Foods to Plaintiffs and those similarly situated.  These sales would not have occurred if Defendants had not falsely represented and warranted the contents, ingredients, safety, quality, and nutritional value of Plum Baby Foods.

158.    These sales allowed Defendants to capitalize on, and reap enormous profits from, consumers who paid the purchase price or premium for the Baby Foods that were not as advertised.

## RULE 9(B) ALLEGATIONS

159.    To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

a.  WHO:  Campbell and Plum, PBC, acting through their employees and agents, made material misrepresentations and omissions of fact in the sale, marketing, advertising, and promotion of Plum Baby Foods.

b.  WHAT:  Campbell and Plum, PBC made material misrepresentations and omissions by marketing, advertising, promoting, and selling Plum Baby Foods as containing listed ingredients and nutritional benefits, and using materially misleading and false terminology to describe the contents, including but not limited to: "organic," "non-GMO," "nutritious," "made from the best ingredients," and safe for consumption by infants and children.  Such representations and warranties were deceptive and misleading because Plum Baby Foods contained heavy metals that pose a danger to the health and safety of babies and children when ingested.  Defendants failed to inform consumers that Plum Baby Foods contained elevated levels of heavy metals, including cadmium, arsenic, lead, and mercury.  Plaintiffs and similarly situated reasonable consumers expected that Plum Baby Foods, and in particular those marketed as "perfect," "organic," "nutritious," "non-GMO" and "packed with essential vitamins and minerals" would only contain objectively safe ingredients and components and would not contain dangerous levels of undisclosed heavy metals, and this was known to Defendants.  Defendants failed to inform Plaintiffs and similarly situated consumers that Plum Baby Foods contained heavy metals because Defendants intended for them to believe that Plum Baby Foods were safe and healthy and posed no unreasonable safety risks to babies and children.  Indeed, Defendants knew that their representations and warranties and omissions rendered the contents of the packages, labels, and marketing, advertising, and promotions false and misleading, because Plum Baby Foods products contained measurable and elevated levels of heavy metals.

47

c.  WHERE:  The misrepresentations and material omissions were on Plum Baby Foods packages, labels and marketing, advertising, and promotions.  These misrepresentations and material omissions were included on the products themselves, which failed to disclose the presence of heavy metals:



d.  WHEN:  Defendants made the material misrepresentations and omissions every time Plum Baby Foods were sold, marketed, advertised, and promoted.

e.  WHY:  Knowing that consumers would not purchase Plum Baby Foods containing elevated levels of heavy metals, Defendants intentionally failed to inform consumers that Plum Baby Foods contained of heavy metals.  Defendants took these actions in order to profit from the sale of Plum Baby Foods despite the health risks they posed, placing profits ahead of safety.

f.  HOW:  Defendants made material misrepresentations and failed to disclose material facts concerning the presence of heavy metals in its Plum Baby Foods by falsely representing the contents, ingredients, safety, quality, and nutritional value portraying Plum Baby Foods

premium baby food products that are safe, nutritious, and healthy both directly and through the terminology and imagery utilized as aforesaid, and failing to inform consumers that they contained heavy metals.

## TOLLING AND ESTOPPEL

### A.    Discovery Rule Tolling

160.    Plaintiffs and the Classes had no way of knowing about Defendants' conduct with respect to the presence of heavy metals in Plum Baby Foods.

161.    Neither Plaintiffs nor any other members of the Classes, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and members of the Classes did not discover and did not know of facts that would have caused a reasonable person to suspect that Defendants were engaged in the conduct alleged herein.

162.    For these reasons all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs and the Classes.

### B.    Fraudulent Concealment Tolling

163.    By failing to provide notice of the presence of heavy metals in Plum Baby Foods, Defendants concealed their conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Classes.

164.    Upon information and belief, Defendants intended their acts to conceal the facts and claims from Plaintiffs and members of the Classes. Plaintiffs and the members of the Classes were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes should be tolled.

## CLASS ACTION ALLEGATIONS

165.    Pursuant to Rule 23(a) and (b)(3), Plaintiffs bring this action on behalf of a proposed

classes defined as follows:

> **The Nationwide Class.** All persons who purchased Plum Baby Foods in the United
> States within the Class Period.

> Excluded from the Nationwide Class are: (a) Defendants, Defendants' board
> members, executive-level officers, and attorneys, and immediately family members
> of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's
> immediate family, and the Court staff; and (d) any person that timely and properly
> excludes himself or herself from the Class in accordance with Court-approved
> procedures.

166.    Plaintiff Pangelinan (the "Arizona Plaintiff") also seeks certification of the

following Class (the "Arizona Class"):

> All persons residing in **Arizona** who purchased Plum Baby Foods within the
> Class Period.

167.    Plaintiffs Alexander, Lockhart, Olmos, and Pereira (the "California Plaintiffs") also

seek certification of the following Class (the "California Class"):

> All persons residing in **California** who purchased Plum Baby Foods within the
> Class Period.

168.    Plaintiff Whiteway (the "Colorado Plaintiff") also seeks certification of the

following Class (the "Colorado Class"):

> All persons residing in **Colorado** who purchased Plum Baby Foods within the
> Class Period.

169.    Plaintiff Waters (the "Florida Plaintiff") also seeks certification of the following

Class (the "Florida Class"):

> All persons residing in **Florida** who purchased Plum Baby Foods within the
> Class Period.

170.    Plaintiff Smid (the "Illinois Plaintiff") also seeks certification of the following Class

(the "Illinois Class"):

> All persons residing in **Illinois** who purchased Plum Baby Foods within the Class Period.

171.    Plaintiff Butkus (the "Kentucky Plaintiff") also seeks certification of the following Class (the "Kentucky Class"):

> All persons residing in **Kentucky** who purchased Plum Baby Foods within the Class Period.

172.    Plaintiff Daigs (the "Louisiana Plaintiff") also seeks certification of the following Class (the "Louisiana Class"):

> All persons residing in **Louisiana** who purchased Plum Baby Foods within the Class Period.

173.    Plaintiff Baccari (the Massachusetts Plaintiff") also seeks certification of the following Class (the "Massachusetts Class"):

> All persons residing in **Massachusetts** who purchased Plum Baby Foods within the Class Period.

174.    Plaintiff Lohse (the "Michigan Plaintiff") also seeks certification of the following Class (the "Michigan Class"):

> All persons residing in **Michigan** who purchased Plum Baby Foods within the Class Period.

175.    Plaintiff Boots (the "Minnesota Plaintiff") also seeks certification of the following Class (the "Minnesota Class"):

> All persons residing in **Minnesota** who purchased Plum Baby Foods within the Class Period.

176.    Plaintiff Williams (the "Missouri Plaintiff") also seeks certification of the following Class (the "Missouri Class"):

> All persons residing in **Missouri** who purchased Plum Baby Foods within the Class Period.

177. Plaintiff Carranza (the "Nebraska Plaintiff") also seeks certification of the following Class (the "Nebraska Class"):

All persons residing in **Nebraska** who purchased Plum Baby Foods within the Class Period.

178. Plaintiff Merlin (the "New Hampshire Plaintiff") also seeks certification of the following Class (the "New Hampshire Class"):

All persons residing in **New Hampshire** who purchased Plum Baby Foods within the Class Period.

179. Plaintiffs Johnson and Smith (the "New Jersey Plaintiffs") also seek certification of the following Class (the "New Jersey Class"):

All persons residing in **New Jersey** who purchased Plum Baby Foods within the Class Period.

180. Plaintiff Lockhart (the "New Mexico Plaintiff") also seeks certification of the following Class (the "New Mexico Class"):

All persons residing in **New Mexico** who purchased Plum Baby Foods within the Class Period.

181. Plaintiffs Hall and Van Den Essen (the "New York Plaintiffs") also seek certification of the following Class (the "New York Class"):

All persons residing in **New York** who purchased Plum Baby Foods within the Class Period.

182. Plaintiff Geffken (the "North Carolina Plaintiff") also seeks certification of the following Class (the "North Carolina Class"):

All persons residing in **North Carolina** who purchased Plum Baby Foods within the Class Period.

183. Plaintiffs Farmer and Jones (the "Ohio Plaintiffs") also seek certification of the following Class (the "Ohio Class"):

All persons residing in **Ohio** who purchased Plum Baby Foods within the Class Period.

184.    Plaintiff Syed (the "Pennsylvania Plaintiff") also seeks certification of the following Class (the "Pennsylvania Class"):

All persons residing in **Pennsylvania** who purchased Plum Baby Foods within the Class Period.

185.    Plaintiff Kozaczka (the "Rhode Island Plaintiff") also seek certification of the following Class (the "Rhode Island Class"):

All persons residing in **Rhode Island** who purchased Plum Baby Foods within the Class Period.

186.    Plaintiffs Austin, Richard & Stacey Chase, and Hanna (the "South Carolina Plaintiffs") also seek certification of the following Class (the "South Carolina Class"):

All persons residing in **South Carolina** who purchased Plum Baby Foods within the Class Period.

187.    Plaintiff Lohse (the "South Dakota Plaintiff") also seeks certification of the following Class (the "South Dakota Class"):

All persons residing in **South Dakota** who purchased Plum Baby Foods within the Class Period.

188.    Plaintiff Reagan (the "Tennessee Plaintiff") also seeks certification of the following Class (the "Tennessee Class")

All persons residing in **Tennessee** who purchased Plum Baby Foods within the Class Period.

189.    Plaintiff Hyden (the "Texas Plaintiff") also seeks certification of the following Class (the "Texas Class")

All persons residing in **Texas** who purchased Plum Baby Foods within the Class Period.

190.    Plaintiff Merlin (the "Vermont Plaintiffs") also seeks certification of the following Class (the "Vermont Class"):

All persons residing in **Vermont** who purchased Plum Baby Foods within the Class Period.

191.    Plaintiffs Austin and Barb (the "Virginia Plaintiffs") also seek certification of the

following Class (the "Virginia Class"):

All persons residing in **Virginia** who purchased Plum Baby Foods within the
Class Period.

192.    Plaintiff Rogers (the "Washington Plaintiff") also seeks certification of the

following Class (the "Washington Class"):

All persons residing in **Washington** who purchased Plum Baby Foods within the
Class Period.

193.    Plaintiff Barb (the "West Virginia Plaintiff") also seeks certification of the following

Class (the "West Virginia Class"):

All persons residing in **West Virginia** who purchased Plum Baby Foods within
the Class Period.

194.    Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure,

Plaintiffs bring this action on behalf of a proposed class defined as follows:

**The Injunctive Relief Class.** All persons in the United States who purchased, or
incurred damages by using, the Plum Baby Foods. Plaintiffs ask the Court to
adjudicate only liability, declaratory relief, and injunctive relief through the
Injunctive Relief Class.

The Injunctive Relief Class does not seek any form of monetary relief. Excluded
from the Injunctive Relief Class are: (a) Defendants, Defendants' board members,
executive-level officers, and attorneys, and immediately family members of any of
the foregoing persons; (b) governmental entities; (c) the Court, the Court's
immediate family, and the Court staff; and (d) any person that timely and properly
excludes himself or herself from the Class in accordance with Court-approved
procedures.

195.    Plaintiffs reserve the right to alter the Class definitions as they deem necessary at

any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United

States District Court for the District of New Jersey, and applicable precedent allow.

196.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because

Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

197.    <u>Numerosity - Rule 23(a)(1):</u> The size of the Nationwide Class and each of the state Classes is so large that joinder of all Class members is impracticable. Due to the nature of Defendants' business and the size of the recalls, Plaintiffs believe there are hundreds or thousands of Class members geographically dispersed throughout the United States and hundreds or thousands of Class members in each state.

198.    <u>Existence and Predominance of Common Questions of Law and Fact - Rule 23(a)(2), (b)(3):</u> There are questions of law and fact common to the Nationwide Class and each of the state Classes. These questions predominate over any questions affecting only individual Class members. Common legal and factual questions include but are not limited to:

a.    whether Defendants sold Plum Baby Foods that had detectable levels of heavy metals;

b.    whether Defendants advertised, represented, or held itself out as producing or manufacturing Plum Baby Foods that were safe for infants and children to consume;

c.    whether Defendants expressly warranted the Plum Baby Food;

d.    whether Defendants purported to disclaim any express warranty;

e.    whether Defendants purported to disclaim any implied warranty;

f.    whether any limitation on warranty fails to meet its essential purpose;

g.    whether Defendants intended for Plaintiffs, the Class members, and others to purchase the Plum Baby Food;

h.    whether Defendants intended or foresaw that Plaintiff, the Class members, and others would feed the Plum Baby Foods to their children;

i.    whether and in what manner Defendants were negligent in manufacturing or

processing the Plum Baby Food;

j.  whether Defendants' negligence proximately caused loss, injury, or damages to the Class members;

k.  whether the Class members suffered damages;

l.  whether the Class members are entitled to actual or other forms of damages and other monetary relief; and

m.  whether the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

199.    Defendants engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will substantially advance the resolution of the case.

200.    Typicality - Rule 23(a)(3): Plaintiffs' claims are typical of the claims of the members of the Nationwide Class and each of the state Classes because Defendants injured all Class members through the uniform misconduct described herein; all Class members suffered injury due to Defendants' defective Plum Baby Food; and Plaintiffs seek the same relief as the Class members. Furthermore, there are no defenses available to Defendants that are unique to Plaintiffs.

201.    Adequacy of Representation - Rule 23(a)(4): Plaintiffs are fair and adequate representatives of the Nationwide Class and each of the state Classes because Plaintiffs' interests do not conflict with the Class members' interests. Plaintiffs will prosecute this action vigorously and are highly motivated to seek redress against Defendants. Furthermore, Plaintiffs have selected competent counsel who are experienced in class action and other complex litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have

the resources to do so.

202.    <u>Superiority - Rule 23(b)(3)</u>: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

a.    The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct.

b.    Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

d.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical

matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

203.   <u>Notice</u>: Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

     i.     This lawsuit presents no logistical or other practical difficulties that would impede its management by the Court as a class action; and

     ii.     Defendants have acted on grounds generally applicable to Classes, making class-wide monetary and injunctive relief appropriate and feasible.

     b.     Class members are ascertainable through the use of purchase records, reward and/or membership programs, and the possession of Plum Baby Foods themselves.

### CLAIMS FOR RELIEF

### COUNT 1

### BREACH OF EXPRESS WARRANTY
**(On behalf of the National Class and, alternatively, each State Class)**

204.   Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

205.   Plaintiffs bring this claim individually and on behalf of the Classes.

206.   Defendants were provided with several pre-suit notices regarding their breach of warranties and failed to respond or take any action to cure such breaches.

207.   Plum falsely represented and warranted that Plum Baby Foods were safe, healthy, contained specific ingredients, and were nutritious products to feed to babies and children, utilizing terminology including but not limited to "organic," "nutritious," "perfect," "packed with essential

vitamins and minerals," "healthy" and with lists of ingredients listed on their packages and labels. Each of these statements constitutes an affirmation of fact.

208.    However, the Plum Baby Foods are not in fact safe and healthy and do not contain only the ingredients listed on their labels because they contain heavy metals.

209.    The inclusion of elevated levels of heavy metals is material because elevated levels of these toxins rendered Plum Baby Foods dangerous, presenting a significant, unreasonable risk of physical and cognitive harm, and thus rendering Plum Baby Foods worthless. Plaintiffs and those similarly situated would not have purchased the Plum Baby Foods in the absence of these false and misleading representations and warranties, and/or if the true facts had been disclosed.

210.    Defendants' representations regarding the ingredients in Plum Baby Foods related to the goods and became part of the basis of the bargain between Defendants and Plaintiffs and similarly situated purchasers of Plum Baby Foods.

211.    Plaintiffs and members of the Classes purchased Plum Baby Foods because they relied on and believed that they conformed to the express warranties.

212.    As set forth herein, Defendants' statements concerning the safety, health benefits, and ingredients in Plum Baby Foods were false and materially misleading.

213.    All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiffs and the other members of the Classes.

214.    As a result of Defendants' breaches of its express warranties, Plaintiffs and the other members of the Classes were damaged in the amount of the purchase price they paid for Plum Baby Food, which they would not have otherwise paid, in amounts to be proven at trial.

215.    Defendants were on notice that Plum Baby Foods contained elevated levels of heavy metals, that the presence of these toxins was contrary to and breached Defendants' express

warranties, and that Plaintiffs and similarly situated class members would be and actually were damaged as a result.

216.    As a proximate result of the breach of warranties by Defendants, Plaintiffs and the other members of the Classes did not receive goods as warranted.  Among other things, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed herein.  Had Plaintiffs and the members of the Classes known the true facts, they would not have purchased the subject Plum Baby Foods.

## COUNT 2

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
AND FITNESS FOR A PARTICULAR PURPOSE
(On behalf of the National Class and, alternatively, each State Class)**

217.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

218.    Plaintiffs brings this claim individually and on behalf of the Classes.

219.    Defendants were provided with several pre-suit notices regarding their breach of warranties and failed to respond or take any action to cure such breaches.

220.    Defendants knew that the purpose for which consumers purchased Plum Baby Foods was to provide safe, healthy, and nutritious foods to their infants and children, containing only the ingredients represented on the packages, labels, marketing, advertising, and promotions.

221.    Defendants knew that Plaintiffs and similarly situated consumers trusted and relied on the accuracy of the marketing, packaging, and labeling for the Plum Baby Foods, and that Defendants were supplying baby food that was safe and suitable for consumption by their infants and children.

222.    Plaintiffs and members of the Classes relied on Defendants to not include unsafe

ingredients such as elevated levels of heavy metals in Plum Baby Foods. Had they known, or even suspected, that Defendants' foods were contaminated with elevated levels of heavy metals, they would not have purchased the subject foods.

223.     Plaintiffs and members of the Classes were injured because Plum Baby Foods were not fit for the particular purpose for which they were purchased, namely to provide safe, healthy, and nutritious food to be fed to their infants and children.

224.     As a proximate result of the breach of implied warranties by Defendants, Plaintiffs and the other members of the Classes did not receive merchantable goods that were fit for their intended purpose.  Among other things, Plaintiffs and members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed above.  Had Plaintiffs and the members of the Classes known the true facts, they would not have purchased the subject Plum Baby Foods.

## COUNT 3

### NEGLIGENT MISREPRESENTATION
### (On behalf of the National Class and, alternatively, each State Class)

225.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

226.     Plaintiffs bring this claim individually and on behalf of the Classes.

227.     Defendants owed a duty to Plaintiffs and the Classes to exercise reasonable and ordinary care in the formulation, design, testing, manufacture, packaging, labeling, marketing, advertising, promotion, distribution, and sale of Plum Baby Foods.

228.     Defendants breached its duty to Plaintiffs and the Classes by designing, testing, formulating, manufacturing, packaging, labeling, marketing, advertising, promoting, distribution, and sale of Plum Baby Foods to Plaintiffs and the Classes, because Plum Baby Foods contained

elevated levels of heavy metals,  Plum provided inaccurate and materially misleading information as to the ingredients, qualities, characteristics, and suitability for consumption of Plum Baby Foods, and Defendants failed to remove the subject baby food products from the marketplace or to take other appropriate remedial action to protect the safety and health of the infants and children that Defendants knew would eat Plum Baby Foods containing elevated levels of heavy metals.

229.    Defendants knew or should have known that the ingredients, qualities, and characteristics of the foods were not as represented, marketed, advertised, or promoted, that Plum Baby Foods were not suitable for their intended use of consumption by children, and were otherwise not as warranted and represented by Defendants.  Defendants knew or should have known that (1) Plum Baby Foods were not nutritious, superior quality, healthy, and safe for consumption because they contained elevated levels of heavy metals that did not conform to the packaging, labeling, or other representations and statements of the ingredients and quality, safety, and nutritional value of Plum Baby Foods; and (2) Plum Baby Foods were otherwise not as represented and warranted by Defendants.

230.    Defendants were in the business of supplying this information to Plaintiffs and similarly-situated consumers.

231.    As a direct and proximate result of Defendants' aforesaid conduct, Plaintiffs and the Classes have suffered actual damages in that they purchased Plum Baby Foods that presented an unreasonable risk of harm and that were thus worthless.  Plaintiffs and the similarly situated members of the Classes would not have purchased Plum Baby Foods at all in the absence of the misrepresentations catalogued herein, and if they had been provided accurate information, including that Plum Baby Foods contained elevated levels of heavy metals.

## COUNT 4

### FRAUD
**(On behalf of the National Class and, alternatively, each State Class)**

232.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

233.    Plaintiffs bring this claim individually and on behalf of the Classes.

234.    Defendants made material misrepresentations and omissions concerning a presently existing or past fact.  Defendants intentionally failed to fully and truthfully disclose to Plaintiffs and similarly situated consumers the true list of ingredients in Plum Baby Foods, and the true safety, nutritional value, and risks of eating Plum Baby Foods, which was not readily discoverable until this information was recently made public on a widescale basis through the House Report.  As a result, Plaintiffs and the other members of the Classes relied on the false and misleading information provided by Plum, and were thus fraudulently induced to purchase the Plum Baby Foods containing elevated levels of heavy metals.

235.    Defendants' affirmative misrepresentations and omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and other members of the Classes would rely on them.

236.    Plaintiffs and other members of the Classes reasonably relied on these statements and omissions and suffered damages as a result.

## COUNT 5

### UNJUST ENRICHMENT
**(On behalf of the National Class and, alternatively, each State Class)**

237.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

238.    Plaintiffs brings this claim individually and on behalf of the Classes.

239.    This cause of action is pled in the alternative to the other claims.

240.    Plaintiffs and those similarly situated conferred a tangible economic benefit upon Defendants by purchasing the Plum Baby Foods.  Defendants appreciated those economic benefits in the form of increased sales and revenue.  Plaintiffs and those similarly situated would not have purchased the Plum Baby Foods had they known that they contained elevated levels of heavy metals.

241.    By engaging in the conduct described above, Defendants were unjustly enriched and received a benefit beyond what was contemplated by the parties, at the expense of Plaintiffs and those similarly situated.

242.    It would be unjust and inequitable for Defendants to retain the payments Plaintiffs and those similarly situated made for the Plum Baby Foods.

243.    By reason of the foregoing, Defendants are liable to Plaintiffs and members of the Classes for the economic harm that they have suffered as a result of Defendants' actions, the amount of which shall be determined at trial.

## COUNT 6

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT,**
**N.J.S.A. 56:8-1 *et seq*.**
**(On behalf of the National Class and, alternatively, the New Jersey Class)**

244.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

245.    Plaintiffs brings this claim individually and on behalf of the Classes.

246.    The New Jersey Consumer Fraud Act prohibits, *inter alia*:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

247.    Defendants' misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of elevated levels of heavy metals in Plum Baby Food, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of baby food products in violation of the New Jersey Consumer Fraud Act.

248.    Defendants' false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase Plum Baby Foods.

249.    Defendants failed to inform consumers that Plum Baby Foods contained elevated levels of heavy metals.  That information would have been material to any consumer deciding whether to purchase Plum Baby Foods.

250.    Defendants made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiffs and similarly situated Class members reasonably believed that Plum Baby Foods did not contain any heavy metals, much less elevated levels of heavy metals, and were induced into purchasing Plum Baby Foods by these misrepresentations and omissions.

251.    Upon information and belief, Defendants' misrepresentations and omissions were created, approved, and implemented from its New Jersey headquarters.

252.    Plaintiffs and the other members of the Classes suffered an ascertainable loss as a direct and proximate result of Defendants' actions in violation of the New Jersey Consumer Fraud Act.

253.    As a consequence of Defendants' wrongful actions, Plaintiffs and the other members of the Class suffered an ascertainable monetary loss based on and measured by the price they paid for Plum Baby Food, which they would not have paid in the absence of the aforesaid wrongdoing.

254.    Plaintiffs and other members of the Class suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have purchased Plum Baby Foods if the true facts concerning elevated levels of heavy metals had been known.

255.    The difference in value between the Plum Baby Foods promised and the Plum Baby Foods received can be reasonably quantified.

256.    Defendants' sale of Plum Baby Foods containing elevated levels of heavy metals for consumption by infants and children was unconscionable, and the misrepresentations and omissions Defendants made with regard to Plum Baby Foods were made for the sole purpose of inducing consumers to purchase Plum Baby Foods to feed to their infants and children irrespective of any health consequences.  Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the health, safety, and well-being of infants and children eating Plum Baby Foods.  Defendants are therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

257.    By reason of the foregoing, Defendants are liable to Plaintiffs and the other members of the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit.  N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

## COUNT 7

### VIOLATIONS OF ARIZONA CONSUMER FRAUD ACT,
### Ariz. Rev. Stat. §§ 44-1521, *et seq*.
### (On behalf of the Arizona Class)

258.    The Arizona Plaintiff identified above, individually and on behalf of the Arizona Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

259.    Defendants are each a "person" as defined by Ariz. Rev. Stat. § 44-1521(6).

260.    Defendants advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

261.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521(5)) in violation of Ariz. Rev. Stat. § 44-1522(A).

262.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

263.    As a direct and proximate result of Defendants' deceptive acts and practices, Arizona Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Plum Baby Foods.

264.    Arizona Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 8

**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*. (the "UCL")**
**(On behalf of the California Class)**

265.    The California Plaintiffs identified above, individually and on behalf of the California Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

266.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

267.    The acts, omissions, misrepresentations, practices, and non-disclosures

of Defendants as alleged herein constitute business acts and practices.

268.    Unlawful:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.;

b.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; and

c.    The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100, *et seq*.

269.    Unfair: Defendants' conduct with respect to the labeling, advertising, and sale of the Plum Baby Foods was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

270.    Defendants' conduct with respect to the labeling, advertising, and sale of the Plum Baby Foods was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, and the California Sherman Food, Drug, and Cosmetic Law. Defendants' conduct with respect to the labeling, advertising, and sale of the Plum Baby Foods was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

271.    Fraudulent:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

272.    As set forth herein, Defendants' claims relating to the ingredients stated on the Plum Baby Foods' labeling and moreover Defendants' representations about the contents, ingredients, safety, quality, and nutritional value of Plum Baby Foods, as stated above, are false likely to mislead or deceive the public.

273.    Defendants profited from the sale of the falsely, deceptively, unfairly, and unlawfully advertised and packaged Plum Baby Foods to unwary consumers.

274. California Plaintiffs and Class members are likely to continue to be damaged by Defendants' deceptive trade practices, because Defendants continue to disseminate misleading information on the Plum Baby Foods packaging. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

275. Defendants' conduct caused and continues to cause substantial injury to California Plaintiffs and Class members. California Plaintiffs and Class members have suffered injury in fact as a result of Defendants' unlawful, unfair, and fraudulent conduct.

276. In accordance with Bus. & Prof. Code § 17203, California Plaintiffs seek an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

277. California Plaintiffs and Class members also seek an order for and restitution of all monies from the sale of the Plum Baby Food, which were unjustly acquired through acts of unlawful competition.

## COUNT 9

### VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW,
### Cal. Bus. & Prof. Code § 17500 (the "FAL")
### (On behalf of the California Class)

279. The California Plaintiffs identified above, individually and on behalf of the California Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

280. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

281.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

282.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendants relating to the Plum Baby Foods misled consumers acting reasonably as to Defendants' representations about the contents, ingredients, safety, quality, and nutritional value of Plum Baby Foods, as stated above.

283.    California Plaintiffs suffered injury in fact as a result of Defendants' actions as set forth herein because they purchased the Plum Baby Foods in reliance on Defendants' false and misleading labeling claims concerning the Plum Baby Foods', among other things, the contents, ingredients, safety, quality, and nutritional value of Plum Baby Foods, as stated above.

284.    Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised the Plum Baby Foods in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from their advertising.

285.    Defendants profited from the sale of the falsely and deceptively advertised Plum Baby Foods to unwary consumers.

286.    As a result, California Plaintiffs, California Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

287.    Pursuant to Cal. Bus. & Prof. Code § 17535, California Plaintiffs, on behalf of members of the California Class, seek an order enjoining Defendants from continuing to

engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT 10

**VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**Cal. Civ. Code § 1750, *et seq*. (the "CLRA")**
**(On behalf of the California Class)**

288. The California Plaintiffs identified above, individually and on behalf of the California Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

289. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

290. Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Plum Baby Foods for personal, family, or household purposes by California Plaintiffs and Class members, and violated and continue to violate the following sections of the CLRA:

    a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b.     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c.     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

291.    Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Plum Baby Foods to unwary consumers.

292.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

293.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs provided a letter to Defendants with notice of their alleged violations of the CLRA, demanding that Defendants correct such violations, and providing them with the opportunity to correct their business practices. If Defendants do not thereafter correct their business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

294.    Pursuant to California Civil Code § 1780, California Plaintiffs seek injunctive relief, their reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT 11

### VIOLATIONS OF COLORADO CONSUMER PROTECTION ACT,
### Colo. Rev. Stat. §§ 6-1-101, *et seq*.
### (On behalf of the Colorado Class)

295.    The Colorado Plaintiff identified above, individually and on behalf of the Colorado Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

296.    Defendants are each a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

297.    Defendants engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

298.    The Colorado Plaintiff and Subclass members, as well as the general public, are actual or potential consumers of the products and services offered by Defendants or their successors in interest to actual consumers.

299.    Defendants engaged in deceptive trade practices in the course of their business, in violation of Colo. Rev. Stat. § 6-1-105(1)(g), by, among other things, representing that Plum Baby Foods are of a particular standard, quality, or grade, while they knew or should know that they are of another.

300.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

301.    As a direct and proximate result of Defendants' deceptive trade practices, Colorado Plaintiff and Subclass members suffered injuries to their legally protected interests.

302.    Defendants' deceptive trade practices significantly impact the public because Defendants are national manufacturers of baby food.

303.    The Colorado Plaintiff and Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendants' bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 12

### VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
### Fla. Stat. §§ 501.201, *et seq.*
### (On behalf of the Florida Class)

278.    The Florida Plaintiff identified above, individually and on behalf of the Florida Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

279.    The Florida Plaintiff and Class members are "consumers" as defined by Fla. Stat. § 501.203.

280.    Defendants advertised, offered, or sold goods or services in Florida and engaged in

trade or commerce directly or indirectly affecting the people of Florida.

281.    Defendants engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

282.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

283.    As a direct and proximate result of Defendants' deceptive acts and practices, the Florida Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

284.    The Florida Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## COUNT 13

**VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT,
815 Ill. Comp. Stat. §§ 505,** *et seq.*
**(On behalf of the Illinois Class)**

285.    The Illinois Plaintiff identified above, individually and on behalf of the Illinois Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

286.    Defendants are each a "person" as defined by 815 Ill. Comp. Stat. § 505/1(c).

287.    The Illinois Plaintiff and Class members are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e).

288.    Defendants' conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).  Defendants' conduct is described in full

detail above.

289.    Defendants' conduct constitutes deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2.

290.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

291.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

292.    As a direct and proximate result of Defendants' deceptive acts and practices, Illinois Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

293.    The Illinois Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 14

**VIOLATIONS OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**815 Ill. Comp. Stat. §§ 505,** *et seq.*
**(On behalf of the Illinois Class)**

294.    The Illinois Plaintiff identified above, individually and on behalf of the Illinois Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

295.    Defendants are each a "person" as defined by 815 Ill. Comp. Stat. § 510/1(5).

296.    Defendants engaged in deceptive trade practices in the conduct of their business, in

violation of 815 Ill. Comp. Stat. § 510/2(a) by making misrepresentations and false statements concerning the qualities of Plum Baby Foods.

297.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

298.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Illinois Plaintiff and Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

299.    As a direct and proximate result of Defendants' deceptive acts and practices, Illinois Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

300.    The Illinois Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees

## COUNT 15

### VIOLATIONS OF KENTUCKY CONSUMER PROTECTION ACT,
### Ky. Rev. Stat. §§ 367.110, *et seq*.
### (On behalf of the Kentucky Class)

301.    The Kentucky Plaintiff identified above, individually and on behalf of the Kentucky Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

302.    Defendants are each a "person" as defined by Ky. Rev. Stat. § 367.110(1).

303.    Defendants advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. § 367.110(2).

304.    Defendants engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170, as described herein.

305.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

306.    The Kentucky Plaintiff and Class members' purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property as a result of Defendants' unlawful acts and practices.

307.    The above unlawful acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Kentucky Plaintiffs and Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

308.    As a direct and proximate result of Defendants' deceptive acts and practices, the Kentucky Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

309.    The Kentucky Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 16

**DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW**
**Mass. Gen. Laws ch. 93a, § 1, *et seq*.**
**(On behalf of the Massachusetts Class)**

310.    The Massachusetts Plaintiff identified above, individually and on behalf of the Massachusetts Class, repeats and realleges all previously alleged paragraphs, as if fully alleged

77

herein.

311.    Defendants, the Massachusetts Plaintiff, and the Massachusetts Class are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

312.    Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

313.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

314.    In selling their Plum Baby Foods, Defendants touted the quality of their food safety, when in reality their Plum Baby Foods were contaminated with excessive levels of heavy metals.

315.    The Massachusetts Plaintiff and Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations regarding the Products safety. Defendants' violations present a continuing risk to Massachusetts Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

316.    As a direct and proximate result of Defendants' violations of the Massachusetts Act, the Massachusetts Plaintiff, and the Class have suffered injury-in-fact and/or actual damage.

317.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Plaintiff and Class members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts Plaintiff and Massachusetts Class member.

318.    On March 10, 2021, the Massachusetts Plaintiff sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). Because Defendants failed to remedy their unlawful conduct within the

requisite time period, the Massachusetts Plaintiff seeks all damages and relief to which the Massachusetts Plaintiff and the Massachusetts Class are entitled.

## COUNT 17

### VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT,
### Mich. Comp. Laws Ann. §§ 445.903, *et seq*.
### (On behalf of the Michigan Class)

319.    The Michigan Plaintiff identified above, individually and on behalf of the Michigan Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

320.    The Michigan Plaintiff and Michigan Class members are "persons" as defined by Mich. Comp. Laws Ann. § 445.902(d).

321.    Defendants offered and sold goods in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.902(g).

322.    Defendants engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1) by (a) representing that their goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that their goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

323.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

324.    As a direct and proximate result of Defendants' deceptive acts and practices, the Michigan Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

325.    The Michigan Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and any other relief that the Court deems just and proper.

## COUNT 18

### VIOLATIONS OF MINNESOTA CONSUMER FRAUD ACT, Minn. Stat. §§ 325F.68, *et seq*. and Minn. Stat. §§ 8.31, *et seq*. (On behalf of the Minnesota Class)

326.    The Minnesota Plaintiff identified above, individually and on behalf of the Minnesota Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

327.    The Minnesota Plaintiff and Class members are each a "person" as defined by Minn. Stat. § 325F.68(3).

328.    Defendants' goods, services, commodities, and intangibles (specifically, Plum Baby Foods) are "merchandise" as defined by Minn. Stat. § 325F.68(2).

329.    Defendants engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

330.    Defendants engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

331.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

332.    Defendants intended to mislead Minnesota Plaintiff and Class members and induce them to rely on its misrepresentations and omissions.

333.    Defendants' fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased and/or used Plum Baby Foods.

334.    As a direct and proximate result of Defendants' deceptive acts and practices, the Minnesota Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

335.    The Minnesota Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, injunctive or other equitable relief, and attorneys' fees, disbursements, and costs.

## COUNT 19

**VIOLATIONS OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**Minn. Stat. §§ 325D.43,** *et seq.*
**(On behalf of the Minnesota Class)**

336.    The Minnesota Plaintiff identified above, individually and on behalf of the Minnesota Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

337.    By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions: representing that their goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1) and (5);

representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1) and (7); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1) and (13).

338.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

339.    As a direct and proximate result of Defendants' deceptive acts and practices, Minnesota Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

340.    Minnesota Plaintiff and Minnesota Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief and attorneys' fees and costs.

## COUNT 20

### VIOLATIONS OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW,
### La. Rev. Stat. Ann. §§ 51:1401, *et seq*.

341.    The Louisiana Plaintiff identified above, individually and on behalf of the Louisiana Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

342.    The Louisiana Plaintiff and the Class members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

343.    The Louisiana Plaintiff and Class members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

344. Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

345. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Unfair acts are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation.

346. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

347. Defendants' unfair and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Louisiana Plaintiff and Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

348. As a direct and proximate result of Defendants' deceptive acts and practices, the Louisiana Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

349. Louisiana Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages; treble damages for Defendants' knowing violations of the Louisiana CPL; declaratory relief; attorneys' fees; and any other relief that is just and proper.

## COUNT 21

### VIOLATIONS OF LOUISIANA REDHIBITION LAW
La. Civ. Code Ann. art. 2520, *et seq.*
(On behalf of the Louisiana Class)

350. The Louisiana Plaintiff identified above, individually and on behalf of

the Louisiana Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

351.    At all relevant times, Defendants were a "merchant" with respect to baby food.

352.    Defendants have violated Louisiana's Redhibition Law, La. Civ. Code Ann. Art. 2520, *et seq.*, by manufacturing and selling Plum Baby Foods with heavy metal in the products. Therefore, Plum Baby Foods is not suitable for consumption in Louisiana.

353.    The Plum Baby Foods was warranted as being in merchantable condition and being fit for the ordinary purpose for which baby food is used. However, as alleged throughout, infra, Plum Baby Foods were sold in a condition that was not merchantable/or fit for their ordinary purpose in violation of the implied warranty.

354.    The manufacturing defect has made using Plum Baby Foods dangerous. Accordingly, the Louisiana Plaintiff and Class members would not have purchased Plum Baby Foods had they known about the defect.

355.    As a direct and proximate result of Defendants' conduct, the Louisiana Plaintiff and Class members have been harmed in that they purchased Plum Baby Foods they otherwise would not have.

356.    The Louisiana Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including specifically damages for not receiving the benefit of their bargain as well as any available equitable relief. The amount of damages due will be proven at trial.

<u>**COUNT 22**</u>

**VIOLATIONS OF MISSOURI MERCHANDISE PRACTICES ACT,**
**Mo. Rev. Stat. §§ 407.010, *et seq*.**
**(On behalf of the Missouri Class)**

357.    The Missouri Plaintiff identified above, individually and on behalf of the

Missouri Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

358.    Defendants are each a "person" as defined by Mo. Rev. Stat. § 407.010(5).

359.    Defendants advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

360.    Missouri Plaintiff and Class members purchased or leased goods or services primarily for personal, family, or household purposes.

361.    Defendants engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

362.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

363.    As a direct and proximate result of Defendants' deceptive acts and practices, the Missouri Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Plum Baby Foods.

364.    The Missouri Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

## COUNT 23

**VIOLATIONS OF NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**Neb. Rev. Stat. §§ 87-301, *et seq*.**
**(On behalf of the Nebraska Class)**

365.    The Nebraska Plaintiff identified above, individually and on behalf of the

Nebraska Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

366.    The Nebraska Plaintiff and Class members are "persons" as defined by Neb. Rev. Stat. § 87-301(19).

367.    Defendants advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska.

368.    Defendants engaged in deceptive trade practices in the course of their business, in violation of Neb. Rev. Stat. §§ 87-302(a)(5),(8) and (10) by representing that goods and services have characteristics, uses, benefits, or qualities that they do not have; representing that goods and services are of a particular standard, quality, or grade if they are of another; and advertising its goods and services with intent not to sell them as advertised and in a manner calculated or tending to mislead or deceive.

369.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

370.    Defendants intended to mislead the Nebraska Plaintiff and Class members and induce them to rely on its misrepresentations and omissions.

371.    As a direct and proximate result of Defendants' deceptive acts and practices, the Nebraska Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

372.    Defendants' deceptive trade practices complained of herein affected consumers at large, including the large percentage of Nebraskans who purchased and/or used Plum Baby Foods.

373.    The Nebraska Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, civil penalties, and

attorneys' fees and costs.

## COUNT 24

**VIOLATIONS OF NEW HAMPSHIRE CONSUMER PROTECTION ACT,**
**N.H. Rev. Stat. Ann. §§ 358-A,** *et seq.*
**(On behalf of the New Hampshire Class)**

374.    The New Hampshire Plaintiff identified above, individually and on behalf of the New Hampshire Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

375.    Defendants are each a "person" under the New Hampshire Consumer Protection statute.

376.    Defendants advertised, offered, or sold goods or services in New Hampshire and engaged in trade or commerce directly or indirectly affecting the people of New Hampshire, as defined by N.H. Rev. Stat. Ann. § 358-A:1.

377.    Defendants engaged in unfair and deceptive acts or practices in the ordinary conduct of their trade or business, in violation of N.H. Rev. Stat. Ann. § 358-A:2 by making misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product line; representing that their goods or services have characteristics, uses, or benefits that they do not have in violation of N.H. Rev. Stat. Ann. § 358-A:2.V; representing that goods or services are of a particular standard or quality if they are of another in violation of N.H. Rev. Stat. Ann. § 358-A:2.VII; and advertising goods or services with intent not to sell them as advertised in violation of N.H. Rev. Stat. Ann. § 358-A:2.IX.

378.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

379.     Defendants acted intentionally, knowingly, and maliciously to violate New Hampshire's Consumer Protection Act, and recklessly disregarded New Hampshire Plaintiff's and New Hampshire Class members' rights.  Defendants' acts and practices went beyond the realm of strictly private transactions.

380.     As a direct and proximate result of Defendants' deceptive acts and practices, the New Hampshire Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

381.     The New Hampshire Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, equitable relief (including injunctive relief), restitution, civil penalties, and attorneys' fees and costs.

## COUNT 25

**VIOLATIONS OF NEW MEXICO UNFAIR PRACTICES ACT,**
**N.M. Stat. Ann. §§ 57-12-2, *et seq*.**
**(On behalf of the New Mexico Class)**

382.     The New Mexico Plaintiff identified above, individually and on behalf of the New Mexico Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

383.     Defendants are each a "person" as meant by N.M. Stat. Ann. § 57-12-2.

384.     Defendants were engaged in "trade" and "commerce" as meant by N.M. Stat. Ann. § 57-12-2(C) when engaging in the conduct alleged.

385.     The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2, *et seq.*, prohibits both unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce.

386.    Defendants engaged in unconscionable, unfair, and deceptive acts and practices in connection with the sale of goods or services in the regular course of their trade or commerce, including the following: knowingly representing that goods and services have characteristics, benefits, or qualities that they do not have, in violation of N.M. Stat. Ann. § 57-12-2(D)(5); knowingly representing that goods and services are of a particular standard or quality when they are of another in violation of N.M. Stat. Ann. § 57-12-2(D)(7); knowingly using exaggeration, innuendo, or ambiguity as to a material fact or failing to state a material fact where doing so deceives or tends to deceive in violation of N.M. Stat. Ann. § 57-12-2(D)(14); taking advantage of the lack of knowledge, experience, or capacity of their consumers to a grossly unfair degree to New Mexico Plaintiffs and Class members' detriment in violation of N.M. Stat. Ann. § 57-2-12(E)(1); and performing these acts and practices in a way that results in a gross disparity between the value received by New Mexico Plaintiffs and Class members and the price paid, to their detriment, in violation of N.M. Stat. Ann. § 57-2-12(E)(2).

387.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

388.    As a direct and proximate result of Defendants' deceptive acts and practices, the New Mexico Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

389.    The New Mexico Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages or statutory damages of $100 (whichever is greater), treble damages or statutory damages of $300 (whichever is greater), and reasonable attorneys' fees and costs.

**COUNT 26**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law §§ 349,** *et seq.*
**(On behalf of the New York Class)**

390.     The New York Plaintiffs identified above, individually and on behalf of the New York Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

391.     Defendants engaged in deceptive acts or practices in the conduct of their business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

392.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

393.     Defendants acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded the New York Plaintiffs and New York Class members' rights.

394.     As a direct and proximate result of Defendants' deceptive acts and practices, New York Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Plum Baby Foods.

395.     Defendants' deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of New Yorkers who purchased and/or used Plum Baby Foods.

396.     The above deceptive and unlawful practices and acts by Defendants caused substantial injury to the New York Plaintiffs and Class members that they could not reasonably avoid.

90

397.    New York Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

## COUNT 27

**VIOLATIONS OF NORTH CAROLINA UNFAIR AND
DECEPTIVE TRADE PRACTICES ACT
N.C. Gen. Stat. §§ 75-1.1, *et seq.*
(On behalf of the North Carolina Class)**

398.    The North Carolina Plaintiff identified above, individually and on behalf of the North Carolina Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

399.    At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

400.    The conduct of Defendants as set forth herein is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

401.    Defendants' false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

402.    Defendants' false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

403.    Defendants' false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest

404.    The North Carolina Plaintiff and Class members have been injured because: (a) they would not have purchased Plum Baby Foods had they known that the products in fact contained excessive levels of arsenic, lead, cadmium, and mercury; (b) they paid a price premium for Plum

Baby Foods based on Defendants' false and misleading statements; and (c) Plum Baby Foods did not have the characteristics and benefits promised because they contained excessive levels heavy metals.

405.    As a result of Defendants' false, misleading, and deceptive statements and representations of fact, North Carolina Plaintiff and Class members suffered economic injuries.

406.    The North Carolina Plaintiff and Class members suffered an ascertainable loss caused by Defendants' misrepresentations because they paid more for Plum Baby Foods than they would have had they known the truth about the Plum Baby Foods.

407.    The above-described conduct violated N.C. Gen. Stat. § 75-1.19(a), including:

    a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

    b.    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

    c.    Advertising goods or services with intent not to sell them as advertised.

408.    As a result, the North Carolina Plaintiff and Class members have been damaged in an amount to be proven at trial, but not less than either the purchase price of Plum Baby Foods or the difference in value between Plum Baby Foods as advertised and Plum Baby Foods as actually sold.

409.    The North Carolina Plaintiff and Class members suffered actual injury as a result of Defendants' unfair actions.

410.    North Carolina Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

411.    Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

412.    The North Carolina Plaintiff Class members have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action

## COUNT 28

**VIOLATIONS OF OHIO CONSUMER SALES PRACTICES ACT,**
**Ohio Rev. Code Ann. § 1345.01 *et seq*.**
**(On behalf of the Ohio Class)**

413.    The Ohio Plaintiff identified above, individually and on behalf of the Ohio Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

414.    The Ohio Consumer Sales Practices Act, O.R.C. § 1345.02 (the "Act"), prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  For example, the Act prohibits suppliers from representing that goods have characteristics or uses or benefits which they do not have.  The Act also prohibits suppliers from representing that their products or goods are of a particular standard, quality, or grade if they are not; that the products or goods have been supplied in accordance with a previous representation, if they have not; and that the transaction involves a warranty, rights, remedies, or obligations if that representation is false.  Defendants' actions as described throughout this Complaint violate each of these provisions.

415.    The Ohio Consumer Sales Practices Act, O.R.C. § 1345.03, also prohibits unconscionable acts or practices in connection with a consumer transaction which includes the circumstances at issue here where Defendants have knowingly taken advantage of the inability of consumers reasonably to protect their interests because of the consumers' ignorance of the toxic levels of heavy metals present in the Plum Baby Foods and because Defendants knowingly made misleading statements of opinion on which Ohio Plaintiff and Class members were likely to rely to their detriment as discussed throughout this Complaint.

416.    Defendants are a "supplier" as that term is defined in O.R.C. § 1345.01(C).

417.    Ohio Plaintiff and the Class members are "consumers" as that term is defined in O.R.C. § 1345.01(D).

418.    Defendants advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio and the Ohio Class members.

419.    Defendants' conduct alleged above constitutes unfair, deceptive, and unconscionable acts and practices in connection with a consumer transaction in violation of O.R.C. § 1345.02 and § 1345.03.  The unfair, deceptive, and unconscionable acts and practices occurred before, during, and after the transactions and include, but are not limited to, misrepresenting that Plum Baby Foods are safe and healthy.

420.    Defendants' conduct was also unfair, deceptive, and unconscionable because Defendants required the Ohio Plaintiffs and the Ohio Class to enter into consumer transactions on terms that Defendants knew were substantially one-sided in favor of Defendants (Ohio Rev. Code Ann. § 1345.03(B)(5)).

421.    Defendants' conduct as alleged above and throughout this Complaint constitutes an act or practice previously declared to be deceptive or unconscionable by rule adopted under division

(B)(2) of § 1345.05 and previously determined by Ohio courts to violate Ohio's Consumer Sales Practices Act and was committed after the decisions containing these determinations were made available for public inspection under division (A)(3) of O.R.C. § 1345.05. The applicable rule and Ohio court opinions include but are not limited to: OAC 109:4-3-16; *Cordray v. Dannon Co.*, PIF No. 10002917 (Dec. 22, 2010); *Brown v. Hartman*, PIF No. 10000070 (Nov. 15, 1982); and *In re United Egg Producers*, PIF No. 10002495 (October 12, 2006).

422.    These misrepresentations constitute the use by Defendants of unconscionable commercial practices, deception, and misrepresentation and, thus constitutes multiple, separate violations of Ohio Revised Code § 1345.01 *et seq.*

423.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

424.    Defendants' unfair, deceptive, and unconscionable acts and practices complained of herein affected the public interest, including the thousands of Ohio residents who purchased and/or used Plum Baby Foods.

425.    Defendants' conduct caused substantial damages to the Ohio Plaintiff and the Class Members as alleged herein because (a) they would not have purchased Plum Baby Foods Products, or would not have purchased Plum Baby Foods on the same terms, had they known that the products in fact contained heavy metals; (b) they paid a price premium for Plum Baby Foods based on Defendants' false, deceptive, and misleading statements; and (c) the Plum Baby Foods did not have the characteristics and benefits promised because they contained excessive and toxic levels of arsenic, lead, cadmium, and mercury.

426.    Accordingly, Ohio Plaintiff and Class Members suffered damages and are entitled to recover damages and attorneys' fees pursuant to Ohio Revised Code § 1345.09.

## COUNT 29

**VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW,
73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq*.
(On behalf of the Pennsylvania Class)**

427.    The Pennsylvania Plaintiff identified above, individually and on behalf of the Pennsylvania Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

428.    Defendants are each a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

429.    The Pennsylvania Plaintiff and Class members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

430.    Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following: representing that goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); representing that goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201-2(4)(vii)); and advertising goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).

431.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

432.    As a direct and proximate result of Defendants' deceptive acts and practices, the Pennsylvania Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Plum Baby Foods.

433.    The Pennsylvania Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

## COUNT 30

**RHODE ISLAND UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION ACT,**
**R.I. Gen. Laws §§ 6-13.1-1, *et seq*.**
**(On behalf of the Rhode Island Class)**

434.    The Rhode Island Plaintiff identified above, individually and on behalf of the Rhode Island Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

435.    The Rhode Island Unfair Trade Practice and Consumer Protection Act ("Rhode Island Act") identifies several types of "unfair" and/or "deceptive trade practices, but also incorporates by reference "the Federal Trade Commission's and federal courts' interpretations of section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1)," rather than set forth specific definitions of those operative terms. R.I. Gen. Laws § 6-13.1-2.

436.    Rhode Island has adopted a three-part test to determine whether an act is "deceptive": (1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3), the representation, omission, or practice is material," meaning the representation is important to the consumer and likely to affect their decisions with respect to the product.

437.    Defendants engaged in unlawful, unfair, and deceptive acts and practices, with respect to the sale and advertisement of the Plum Baby Foods purchased by the Rhode Island Plaintiff and Rhode Island Class members, in violation of R.I. Gen. Laws §§ 6-13.1-1, *et seq*.,

including by misrepresenting the true quality of the Plum Baby Foods and concealing the true risks of the Plum Baby Foods.

438.    The above unfair methods of competition and unfair or deceptive acts or practices by Defendants were conducted in "[t]rade" and/or "commerce," as defined by R.I. Gen. Laws § 6-13.1-1(5).

439.    The above unfair methods of competition and unfair or deceptive acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

440.    Defendants' actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Rhode Island Plaintiff and the Rhode Island Class members.

441.    Defendants' actions were material to the Rhode Island Plaintiff and Rhode Island Class members, who relied on Defendants' representations in that they would not have purchased, chosen, and/or paid for all or part of Plum Baby Foods had they known that they contained heavy metals.

442.    As a direct and proximate result of Defendants deceptive acts and practices, the Rhode Island Plaintiff and Class members suffered an ascertainable loss of money or property, real or personal, as described above.

443.    The Rhode Island Plaintiff and Class members seek relief under R.I. Gen. Laws §§ 6-13.1-5.2, including, but not limited to injunctive relief, restitution, statutory damages, compensatory damages, punitive damages, and attorneys' fees and costs.

## COUNT 31

**VIOLATIONS OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT,**
**S.C. Code Ann. §§ 39-5-10, *et seq*.**
**(On behalf of the South Carolina Class)**

444.    The South Carolina Plaintiffs identified above, individually and on behalf of the

South Carolina Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

445. Defendants are each a "person," as defined by S.C. Code Ann. § 39-5-10(a).

446. South Carolina's Unfair Trade Practices Act ("SCUTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

447. Defendants advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

448. Defendants' acts and practices had, and continue to have, the tendency or capacity to deceive.

449. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

450. Defendants' business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

451. Defendants' unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

452. Defendants' violations present a continuing risk to the South Carolina Plaintiffs and South Carolina Class members as well as to the general public.

453. As a direct and proximate result of Defendants' deceptive acts and practices, the South Carolina Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

454.    The South Carolina Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including damages for their economic losses, treble damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 32

**SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW,**
**S.D. Codified Laws §§ 37-24-1, *et seq.***
**(On behalf of the South Dakota Class)**

455.    The South Dakota Plaintiff incorporates by reference all preceding and subsequent paragraphs.

456.    The South Dakota Deceptive Trade Practices and Consumer Protection Law, among other things, makes it unlawful to "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. Codified Laws § 37-24-6(1).

457.    Defendants engaged in deceptive trade practices in the course of their business, with respect to the sale and advertisement of the Plum Baby Foods purchased by South Dakota Plaintiff and South Dakota Class members, in violation of S.D. Codified Laws §§ 37-24-1, *et seq.*, including by making statements or representations that were false or misleading regarding the quality of the Plum Baby Foods and concealing the true risks of the Plum Baby Foods.

458.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous.

459.    Defendants' actions were negligent, knowing and willful, and/or intentional, wanton and reckless with respect to the rights of South Dakota Plaintiff and the South Dakota Class members.

460.    South Dakota Plaintiff and South Dakota Class members relied on Defendants' representations in that they would not have purchased, chosen, and/or paid for all or part of Plum Baby Foods had they known that they would be exposed to heavy metals.

461.    As a direct and proximate result of Defendants' deceptive acts and practices, South Dakota Plaintiff and South Dakota Class members suffered an ascertainable loss of money or property, real or personal, as described above.

462.    South Dakota Plaintiff and South Dakota Class members seek relief under S.D. Codified Laws §§ 37-24-1, *et seq*., including, but not limited to injunctive relief, compensatory damages, statutory damages, civil penalties and attorneys' fees and costs.

## COUNT 33

**VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977**
**Tenn. Code Ann. § 47-18-101, *et seq*.**
**(On behalf of the Tennessee Class)**

463.    The Tennessee Plaintiff identified above, individually and on behalf of the Tennessee Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

464.    At all times relevant herein, Defendants were engaged in commerce in the State of Tennessee.

465.    At all times relevant herein, Defendants were engaged in commerce in the State of Tennessee.

466.    The conduct of Defendants as set forth herein is unethical, oppressive, unscrupulous, and substantially injurious to the consumers Tennessee; and has the capacity and tendency to deceive the average consumer.

467.    The Tennessee Plaintiff and Class members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2).

468.    Defendants are engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

469.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

470.    Defendants' false, misleading, and deceptive statements and representations of fact that were and are directed to consumers.

471.    Defendants' false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

472.    Defendants' false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

473.    The Tennessee Plaintiff and Class members have been injured because: (a) they would not have purchased Plum Baby Foods had they known that the products in fact contained heavy metals; (b) they paid a price premium for Plum Baby Foods based on Defendants' false and misleading statements; and (c) the Plum Baby Foods did not have the characteristics and benefits promised because they contained heavy metals.

474.    As a result of Defendants' false, misleading and deceptive statements and representations of fact the Tennessee Plaintiff and Class members have suffered economic injuries.

475.    The Tennessee Plaintiff and Class members suffered an ascertainable loss caused by Defendants' misrepresentations because they paid more for Plum Baby Foods than they would have had they known the truth about the product.

476.    The above-described conduct violated Tenn. Code § 47-18- 104, including:

a.    causing likelihood of confusion or of misunderstanding as to the approval or certification of the goods;

b.    representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

c.    representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

d.    advertising goods or services with intent not to sell them as advertised; and

e.    engaging in other conduct which created a likelihood of confusion or of misunderstanding.

477.    As a result, the Tennessee Plaintiff and Class members have been damaged in an amount to be proven at trial.

478.    The Tennessee Plaintiff and Class members suffered actual injury as a result of Defendants' unfair actions.

479.    Pursuant to Tenn. Code §§ 47-18-109, 47-18-109, and 47-18-109(a)(3), the Tennessee Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs, and any other just and proper relief proscribed by the Tennessee CPA.

480.    The Tennessee Plaintiff and Class members have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

**COUNT 34**

**VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT,**
**Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq*.**
**(On behalf of the Texas Class)**

481.    The Texas Plaintiff identified above, individually and on behalf of the Texas Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

482.    Defendants are each a "person," as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

483.    The Texas Plaintiff and the Class members are "consumers," as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

484.    Defendants advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

485.    Defendants engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code Ann. § 17.46(b) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, if they are of another; and advertising goods or services with intent not to sell them as advertised.

486.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

487.    Defendants engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendants engaged in acts or practices which, to

consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

488.    Consumers, including Texas Plaintiff and Class members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Defendants.

489.    As a direct and proximate result of Defendants' deceptive acts and practices, Texas Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

490.    Defendants' violations present a continuing risk to the Texas Plaintiff and Class members as well as to the general public.

491.    Defendants were sent notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning their wrongful conduct as alleged herein by Texas Plaintiff and Class members. Texas Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## COUNT 35

**VIOLATIONS OF THE VERMONT CONSUMER FRAUD ACT**
**Vt. Stat. Ann. tit. 9, § 2451 *et seq.***
**(On behalf of the Vermont Class)**

492.    The Vermont Plaintiff identified above, individually and on behalf of the Vermont Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

493.    The Vermont Plaintiff and Class members are "consumers," as defined by Vt. Stat. Ann. tit. 9, § 2451a(a).

494.    Defendants' conduct as alleged herein related to "goods" or "services," as defined by Vt. Stat. Ann. tit. 9, § 2451a(b).

495.    Defendants are "sellers," as defined by Vt. Stat. Ann. tit. 9, § 2451a(c).

496.    Defendants advertised, offered, or sold goods or services in Vermont and engaged in trade or commerce directly or indirectly affecting the people of Vermont.

497.    Defendants engaged in unfair and deceptive acts or practices, in violation of Vt. Stat. Tit. 9, § 2453(a) when, among other things, representing that Plum Baby Foods, characteristics, ingredients, uses, benefits, or qualities that they do not have.

498.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

499.    Defendants are presumed, as a matter of law under Vt. Stat. Ann. tit. 9, § 2457, to have intentionally violated the Vermont Consumer Protection Act because they failed to sell goods or services in the manner and of the nature advertised or offered.

500.    Defendants' acts and practices caused or were likely to cause injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

501.    Vermont Plaintiffs and Class members seek all monetary and nonmonetary relief allowed by law, including appropriate equitable relief, damages, reasonable attorney's fees, and treble exemplary damages. *See* Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT 36

### VIOLATIONS OF VIRGINIA CONSUMER PROTECTION ACT,
### Va. Code Ann. §§ 59.1-196, *et seq*.
### (On behalf of the Virginia Class)

502.    The Virginia Plaintiffs identified above, individually and on behalf of the Virginia Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

503.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

504.    Defendants are each a "person" as defined by Va. Code Ann. § 59.1-198.

505.    Defendants are a "supplier," as defined by Va. Code Ann. § 59.1-198.

506.    Defendants engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198.  Defendants advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

507.    Defendants engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

508.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

509.    The above-described deceptive acts and practices also violated the following provisions of Va. Code Ann. § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are

of a particular standard, quality, grade, style, or model; and advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

510.    As a direct and proximate result of Defendants' deceptive acts and practices, the Virginia Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

511.    Defendants' violations present a continuing risk to the Virginia Plaintiff and Class members as well as to the general public.

512.    The Virginia Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## COUNT 37

### VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT, Wash. Rev. Code Ann. §§ 19.86.020, *et seq*.

513.    The Washington Plaintiff identified above, individually and on behalf of the Washington Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

514.    Defendants are each a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

515.    Defendants advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010 (2).

516. Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, as described herein.

517. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

518. Defendants' conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, and/or injured persons and had and has the capacity to injure persons. Further, their conduct affected the public interest, including the at least hundreds of thousands of Washingtonians affected by Defendants' deceptive business practices.

519. As a direct and proximate result of Defendants' deceptive acts and practices, the Washington Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods.

520. The Washington Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## COUNT 38

**VIOLATIONS OF WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT,
W. Va. Code §§ 46A-6-101, *et seq*.
(On behalf of the West Virginia Class)**

521. The West Virginia Plaintiff identified above, individually and on behalf of the West Virginia Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

522.    The West Virginia Plaintiff and Class members are "consumers," as defined by W. Va. Code § 46A-6-102(2).

523.    Defendants engaged in "consumer transactions," as defined by W. Va. Code § 46A-6-102(2).

524.    Defendants advertised, offered, or sold goods or services in West Virginia and engaged in trade or commerce directly or indirectly affecting the people of West Virginia, as defined by W. Va. Code § 46A-6-102(6).

525.    Defendants received notice pursuant to W. Va. Code § 46A-6-106(c) concerning their wrongful conduct as alleged herein by the West Virginia Plaintiff and Class members.

526.    Defendants engaged in unfair and deceptive business acts and practices in the conduct of trade or commerce, in violation of W. Va. Code § 46A-6-104, as described herein.

527.    Defendants' unfair and deceptive acts and practices also violated W. Va. Code § 46A-6-102(7) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another; advertising goods or services with intent not to sell them as advertised; engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; using deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; and advertising, displaying, publishing, distributing, or causing to be advertised, displayed, published, or distributed in any

manner, statements and representations with regard to the sale of goods, which are false, misleading or deceptive or which omit to state material information which is necessary to make the statements therein not false, misleading or deceptive.

528.    Defendants' unfair and deceptive acts and practices were unreasonable when weighed against the need to develop or preserve business, and were injurious to the public interest, under W. Va. Code § 46A-6-101.

529.    Defendants' acts and practices were additionally "unfair" under W. Va. Code § 46A-6-104 because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

530.    The injury to consumers from Defendants' conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

531.    Consumers could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers, Defendants created an asymmetry of information between Defendants and consumers that precluded consumers from taking action to avoid or mitigate injury.

532.    Defendants' business practices had no countervailing benefit to consumers or to competition.

533.    Defendants' acts and practices were additionally "deceptive" under W. Va. Code § 46A-6-104 because Defendants made representations or omissions of material facts that misled

or were likely to mislead reasonable consumers, including the West Virginia Plaintiffs and Class members.

534.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

535.   Defendants acted intentionally, knowingly, and maliciously to violate West Virginia's Consumer Credit and Protection Act, and recklessly disregarded West Virginia Plaintiff and Class members' rights. Defendants' unfair and deceptive acts and practices were likely to cause serious harm, and Defendants knew that their deceptive acts would cause harm based upon their business practices and exclusive knowledge of the omissions and misrepresentations herein.

536.   As a direct and proximate result of Defendants' deceptive acts and practices, the West Virginia Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Plum Baby Foods

537.   Defendants' violations present a continuing risk to the West Virginia Plaintiffs and Class members as well as to the general public.

538.   The West Virginia Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $200 per violation under W. Va. Code § 46A-6-106(a), restitution, injunctive and other equitable relief, punitive damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against

Defendants as to each and every count, including:

a) An Order certifying this action as a class action, with classes as defined above;

b) An Order appointing Plaintiffs as class representatives and their counsel as class counsel, to represent the Classes, and requiring Defendants to bear the costs of class notice;

c) An Order requiring Defendants to pay all actual, compensatory, and statutory damages permitted or required for the conduct set forth herein;

d) An Order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice set forth or encompassed herein;

e) An Order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading packaging, labeling, advertising, marketing, or promotion, or a violation of law;

f) An Order enjoining Defendants from selling Plum Baby Foods in any manner suggesting or implying that they are healthy, organic, and/or safe for consumption, as long as they contain elevated levels of heavy metals;

g) An Order requiring Plum to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing baby food products;

h) An Order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Plum from continuing the unlawful practices alleged herein, and injunctive relief to remedy Plum's past conduct;

i) An Order requiring Defendants to pay pre- and post-judgment interest;

j) An Order requiring Defendants to pay treble damages;

k) An Order requiring Defendants to pay punitive damages;

l) An Order awarding attorney's fees and costs, including the costs of pre-suit investigation; and

m) An Order providing for such further relief as the Court deems just and equitable.

113

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all counts and claims.

Dated:  November 1, 2021

/s/ Matthew R. Mendelsohn
Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-0391
Fax: (973) 228-0303
mrm@mazieslater.com

*Plaintiffs' Interim Liaison Counsel*

Gary E. Mason (admitted p*ro have vice*)
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue, NW, Suite 305
Washington, D.C. 20016
Tel.: (202) 429-2290
Fax: (202) 429-2294
gmason@masonllp.com

Erin Green Comite (admitted p*ro have vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main St., P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
ecomite@scott-scott.com

*Plaintiffs' Interim Co-Lead Counsel*

Charles E. Schaffer (admitted p*ro have vice*)
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA  19106-369747
Tel.: (877) 882-1011
Fax: (215) 592-4663
CSchaffer@lfsblaw.com

Melissa R. Emert (admitted p*ro have vice*)
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
Tel.: (800) 711-5258
memert@kgglaw.com

Jonathan Shub, Esq.
**SHUB LAW FIRM LLC**
134 Kings Hwy. E., 2nd Floor
Haddonfield, NJ 08033
(856) 772-7200
jshub@shublawyers.com

Timothy J. Peter (admitted p*ro have vice*)
**FARUQI & FARUQI, LLP**
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Tel.: (267) 536-2145
Fax: (215) 277-5771
tpeter@faruqilaw.com

Steven L. Bloch (admitted p*ro have vice*)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, CT 06901
Tel.: (203) 325-4491
Fax: (203) 325-3769
sbloch@sgtlaw.com

Jeff Goldenberg (admitted p*ro have vice*)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel.: (513) 982-1569
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

*Plaintiffs' Interim Executive Committee*

Aaron M. Zigler (*pro hac vice* forthcoming)
**ZIGLER LAW GROUP, LLC**
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com

Troy E. Walton (*pro hac vice* forthcoming)
Steve Telken (*pro hac vice* forthcoming)
**WALTON TELKEN, LLC**
241 N. Main Street
Edwardsville, IL 62025
Tel: (618) 307-9880
twalton@waltontelken.com
stelken@waltonteklen.com

Joseph P. Guglielmo (admitted p*ro have vice*)
Sean T. Masson (admitted p*ro have vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-4478
Fax: (212) 233-6334
jguglielmo@scott-scott.com
smasson@scott-scott.com

*Additional Counsel*

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

I hereby further certify that to the best of my knowledge the matter in controversy is not

the subject of another action, pending arbitration or administrative proceeding in this District.


Dated: November 1, 2021


/s/ Matthew R. Mendelsohn
Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391

*Plaintiffs' Interim Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021, I electronically filed the forgoing CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<u>/s/ Matthew R. Mendelsohn</u>
Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391

*Plaintiffs' Interim Liaison Counsel*