**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

IN RE PLUM BABY FOOD
LITIGATION                            Civ. No. 1:21-cv-02417-NLH-SAK

This Document Relates To:             **OPINION**

All Actions

---

**APPEARANCES**:

VICTOR A. AFANADOR, ESQ.
SUSANA CRUZ HODGE, ESQ.
JOSEPH J. DEPALMA, ESQ.
LITE DEPALMA GREENBERG & AFANADOR, LLC
570 BROAD STREET, SUITE 1201
NEWARK, NJ 07120

> *On behalf of Movants Ludmila Gulkarov, Janine Torrence, Kelly
> McKeon, Josh Crawford, Vanessa Mathiesen, Autumn Ellison, Jessica
> David, Sarah Brown, Tommy Nurre, and Christina Gonzales*

ERIN GREEN COMTIE, ESQ.
SCOTT LLP
156 SOUTH MAIN STREET, P.O. BOX 192
COLCHESTER, CT 06415

DAVID MAGAGNA, ESQ.
LEVIN SEDRAN & BERMAN
510 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19106

INNESSA MELAMED HUOT, ESQ.
FAUUQI & FARUQI LLP
685 THIRD AVENUE, 26TH FLOOR
NEW YORK, NY 10017

MATTHEW ROSS MENDELSOHN, ESQ.
MAZIE SLATER KATZ & FREEMAN LLC
103 EISENHOWER PARKWAY
ROSELAND, NJ 07068
JOHNATHAN SHUB, ESQ.
SHUB LAW FIRM LLC
143 KINGS HIGHWAY E., 2ND FLOOR
HADDONFIELD, NJ 08033

 *On behalf of Plaintiff Erin Smid*

MATTHEW ROSS MENDELSOHN, ESQ.
MAZIE SLATER KATZ & FREEMAN LLC
103 EISENHOWER PARKWAY
ROSELAND, NJ 07068

 *On behalf of Plaintiffs Andrew Lohse, Fredricka Waters, Amanda*
 *Boots, Ciara Beau Hall, Natalie Williams, Ana Butkus, Courtney*
 *Whiteway, Alexander Van Den Essen, Mithun Alexander, Hibatunoor*
 *Syed, Elizabeth Austin, Eileen Olmos, Cindy Pereira, Lyrik*
 *Merlin, Carrie Reagan, Karleen Kozaczka, Alyssa Barb, Mayelin*
 *Carranza, Mercedes Jones, Ahkilah Johnson, April Lockhart, Amanda*
 *Rogers, Jecoliah Farmer, Lakeisha Daigs*

MATTHEW ROSS MENDELSOHN, ESQ.
MAZIE SLATER KATZ & FREEMAN LLC
103 EISENHOWER PARKWAY
*ROSELAND*, NJ 07068

INESSA MELAMED HUOT, ESQ.
FAUUQI & FARUQI LLP
685 THIRD AVENUE, 26TH FLOOR
NEW YORK, NY 10017

 *On behalf of Plaintiffs-Consolidated Richard Chase and Stacey*
 *Chase*

MATTHEW ROSS MENDELSOHN, ESQ.
MAZIE SLATER KATZ & FREEMAN LLC
103 EISENHOWER PARKWAY
*ROSELAND*, NJ 07068

INESSA MELAMED HUOT, ESQ.
FAUUQI & FARUQI LLP
685 THIRD AVENUE, 26TH FLOOR
NEW YORK, NY 10017

ZACHARY RYNAR, ESQ.

SILVER GOLUB & TEITELL
184 ATLANTIC STREET
STAMFORD, CT 06901

 *On behalf of Plaintiffs-Consolidated Emily Baccari, Jillian*
 *Geffken, and Heather Hyden*

MATTHEW ROSS MENDELSOHN, ESQ.
MAZIE SLATER KATZ & FREEMAN LLC
103 EISENHOWER PARKWAY
*ROSELAND*, NJ 07068

INESSA MELAMED HUOT, ESQ.
FAUUQI & FARUQI LLP
685 THIRD AVENUE, 26TH FLOOR
NEW YORK, NY 10017

GARY S. GRAIFMAN, ESQ.
KANTROWITZ, GOLDHAMER & GRAIFMAN PC
135 CHESTNUT RIDGE ROAD, SUITE 200
MONTVALE, NJ 07645

 *On behalf of Plaintiff-Consolidated Edwina Smith*

MATTHEW ROSS MENDELSOHN, ESQ.
MAZIE SLATER KATZ & FREEMAN LLC
103 EISENHOWER PARKWAY
*ROSELAND*, NJ 07068

INESSA MELAMED HUOT, ESQ.
FAUUQI & FARUQI LLP
685 THIRD AVENUE, 26TH FLOOR
NEW YORK, NY 10017

THOMAS ALAN BROWN, II ESQ.
MOREA SCHWARTZ BRADHAM FRIEDMAN & BROWN LLP
444 MADISON AVENUE, 4TH FLOOR
NEW YORK, NY 10022

 *On behalf of Plaintiff-Consolidated Kristin Hanna*

CHRISTINA GUEROLA SARCHIO, ESQ.
DECHERT LLP
1095 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

HOPE S. FREIWALD, ESQ.
DECHERT LLP

CIRA CENTRE, 2929 ARCH STREET
PHILADELPHIA PA 19104

MARINA SCHWARZ, ESQ.
HARRIS BEACH PCCL
100 WALL STREET
NEW YORK, NY 10005

 *On behalf of Defendants Campbell Soup Company and Plum, PBC*


**HILLMAN**, **District Judge**

 This matter comes before the Court by way of a Motion to Intervene for the Limited Purpose of Seeking a Stay under the First-Filed Rule (ECF No. 84),[1] and Defendants' Motion Requesting Judicial Notice, (ECF No. 88), and Motion to Dismiss, (ECF No. 89).  Plaintiffs oppose all motions.  The Court, having considered all papers filed by the parties, proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.

 For the following reasons, the Motion to Intervene will be dismissed as moot, the Motion for Judicial Notice will be granted, and Plaintiffs' Consolidated Amended Complaint will be dismissed without prejudice.

**BACKGROUND**

 Mithun Alexander, Elizabeth Austin, Emily Baccari, Alyssa

---

[1] Unless otherwise noted, all references to documents filed on the docket will be under Civ. No. 1:21-cv-02417-NLH-SAK.

Barb, Amanda Boots, Ana Butkus, Mayelin Carranza, Richard Chase, Stacey Chase, Lakeisha Daigs, Jecoliah Farmer, Jillian Geffken, Ciara Beau Hall, Kristin Hanna, Heather Hyden, Ahkilah Johnson, Mercedes Jones, Karleen Kozaczka, April Lockhart, Andrew Lohse, Lyrik Merlin, Eileen Olmos, Corinthea Pangelinan, Cindy Pereira, Carrie Reagan, Amanda Rogers, Erin Smid, Edwina Smith, Hibatunoor Syed, Alexander Van Den Essen, Fredricka Waters, Courtney Whiteway, and Natalie Williams (collectively, "Plaintiffs", individually and on behalf of all others similarly situated), filed an Amended Complaint against Campbell Soup Company ("Campbell") and Plum, PBC ("Plum") (collectively, "Defendants"), alleging that their business practices and warranties of their baby food products were misleading, deceptive, unfair, and/or false because such products contain certain heavy metals, including arsenic, lead, cadmium, and mercury.  (ECF No. 81 at 1).

On February 4, 2021, the Subcommittee on Economic and Consumer Policy of the United States House of Representatives issued a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (House Report), and within that report Defendants were listed as one among seven baby food manufacturers that were subject to the congressional inquiry on the safety of baby food products.  (Id. at 4).  The House of Representatives supplemented this report with

Defendants' test results, which found high levels of arsenic, lead, and cadmium in certain baby food products. (Id. at 5-6). Plaintiffs allege that additional testing by Plaintiffs has found heavy metals in elevated levels in certain of Defendants' baby food products. (Id. at 6-7).

Plaintiffs argue that the presence of heavy metals renders these products defective and unfit for use, and that Defendants knowingly sold these defective products and failed to disclose this information to customers, breaching expressed and implied warranties, engaging in negligent misrepresentation, fraud, violating state consumer protection statutes, and unjust enrichment. (Id. at 7).

Plaintiffs filed a Complaint with this Court on February 11, 2021 (ECF No. 1). Plaintiffs Erin Smid, Richard Chase, Stacy Chase, and Edwina Smith moved to consolidate several cases for all purposes in this District that shared the same factual nexus (whereby Defendants allegedly sold baby food products that contained dangerous levels of heavy metals) pursuant to Federal Rule of Civil Procedure 42(a) on April 12, 2021. (ECF No. 19). Defendants responded, agreeing that it was appropriate for the Court to consolidate the proposed consumer class actions on April 29, 2021. (ECF No. 22). On May 3, 2021, a separate contingent of Plaintiffs ("Baccari") opposed consolidating for all purposes asking to remain independent for purposes of trial

proceeding by separate complaint.  (ECF No. 24).

On June 8, 2021, the Multidistrict Litigation ("MDL") Panel denied centralizing all of the proposed class actions regarding baby food products containing allegedly dangerous levels of heavy metals across the industry of baby food manufacturers, including Defendants.  (ECF No. 46).  The MDL Panel believed that the parties should be allowed to self-organize, especially at the time where several motions to transfer various actions were pending.  (Id. at 4).

Following the MDL's decision, on June 30, 2021, United States Magistrate Judge King ordered the consolidation of the New Jersey District cases described above for discovery and case management purposes.  (ECF No. 48).  All Plaintiffs submitted a motion to consolidate an additional case ("Hanna") against Defendants with the instant action for the purposes of entering a Pretrial Order on July 16, 2021, with the same reservations raised by Baccari Plaintiffs in ECF No. 24.  (ECF No. 50).  The Hanna Plaintiffs submitted a motion supporting the motion to consolidate the case for all purposes.  (ECF No. 52).  Defendants submitted a motion supporting the consolidation of the Hanna Plaintiffs as well.  (ECF No. 53).  on July 29, 2021, this Court then consolidated all actions before this Court[2] for

---

[2] Erin Smid v. Campbell Soup Company and Plum, PBC, No. 1:21-cv-02417; Richard Chase and Stacy Chase v. Campbell Soup Company

all purposes and ordered that any additional consumer class action claims alleging only economic damages against Defendants arising out of the same or similar facts be consolidated with the Consolidated Action for all purposes including trial. (ECF No. 54).

The Plaintiffs' interim co-lead class counsel, interim liaison counsel, and interim members of Plaintiffs' executive committee, were appointed on September 17, 2021. (ECF No. 74). The Consolidated Amended Class Action Complaint was filed on November 1, 2021. (ECF No. 81). Defendants filed a motion to request judicial notice and a motion to dismiss on December 16, 2021. (ECF Nos. 88, 89). Plaintiffs then filed their opposition to Defendants' Motion to Dismiss on February 11, 2022, (ECF No. 98), and on the same date opposed the request for judicial notice. (ECF No. 99). Defendants filed their replies to both of Plaintiffs' responses on March 11, 2022. (ECF Nos. 103, 104). Plaintiffs filed another notice of supplemental authority to support Plaintiffs' opposition to Defendants' Motion to Dismiss and Defendants' notice of supplemental authority. (ECF No. 106).

---

and Plum, PBC, No. 1:21-cv-04650; Emily Baccari, Jillian Geffken, Heather Hyden, and Mercedes Jones v. Campbell Soup Company and Plum, PBC, No. 1:21-cv-04749; Edwina Smith v. Campbell Soup Company and Plum PBC, No. 1:21-cv-08567; Kristin Hanna v. Campbell Soup Company and Plum, PBC, No. 1:21-cv-12842.

**a. The Intervenors**

In addition to the briefing between Defendants and Plaintiffs in this case, on August 19, 2021, this Court received a letter from Susana Cruz Hodge, Co-Lead Counsel in In re Plum Baby Food Litigation, No. 4:21-cv-00913-YGR (N.D.Ca) (the "California action").  Ms. Hodge wrote to advise this Court that on July 30, 2021, Judge Rogers denied a motion to transfer filed by Defendant Plum in the California action.[3]  (ECF No. 65). Defendant Plum's motion requested that the California action be transferred to the District of New Jersey, arguing that Defendant Plum was owned by Campbell and was based in New Jersey during the relevant period.  (Id. at 4-5).  In the California action, Judge Rogers found unpersuasive Plum's argument that being headquartered in New Jersey and allegations of activity giving rise to the claims occurring in New Jersey justified a transfer of the California action to New Jersey and ultimately denied Defendant Plum's Motion to Transfer.  (Id. at 5-6).

On August 24, 2021, the Plaintiffs in this matter addressed the August 19 letter from Ms. Hodges to this Court.  (ECF No. 67).  Plaintiffs argued that the Court should disregard the letter because it was improperly filed, because those involved in the California action were non-parties and had not moved to

---

[3] The Court notes that Defendant Campbell is not a defendant in the California action.

intervene, that general personal jurisdiction and venue in this Court was properly found, and that proceeding without the California plaintiffs was not inefficient. (Id.). Plaintiffs further asserted that there was a likelihood that non-Californian plaintiffs would be dismissed from that matter and the two cases would proceed in parallel, akin to In re Nutella Mktg. & Sales Pracs. Litig., No. 11-1086, 2012 WL 12904997 (D.N.J. Feb. 3, 2012). (Id.).

Then, on December 3, 2021, Ludmila Gulkarov, Janine Torrence, Kelly McKeon, Josh Crawford, Vanessa Mathiesen, Autumn Ellison, Jessica David, Sarah Brown, Tommy Nurre, and Christina Gonzalez (collectively, the "Movants," comprising the Plaintiffs from the California action) filed a Motion to Intervene for the limited purpose of seeking a stay under the first-filed rule. (ECF No. 84). Defendants responded in opposition to this motion on December 15, 2021. (ECF No. 86). On that same date, Plaintiffs in this matter responded in opposition to the Motion to Intervene as well. (ECF N0. 87). Movants filed a reply brief in support of its motion for intervention on December 23, 2021, provided an initial notice of supplemental authority with an update on the California action on January 14, 2022, and then provided additional supplemental authority on July 7, 2022. (ECF Nos. 92, 95, 107). Subsequently, Plaintiffs responded to the latest notice of supplemental authority on July 12, 2022.

(ECF No. 108).

    With all of this briefing now considered, the matter is
ripe for adjudication.

## DISCUSSION

### I.    Subject Matter Jurisdiction

    This Court exercises subject matter jurisdiction over this
matter pursuant to the Class Action Fairness Act of 2005
("CAFA"), 28 U.S.C. § 1332(d), because at least one class member
is a citizen of a state other than that of Defendants, there are
more than 100 Class members, and the aggregate amount in
controversy exceeds $5 million, exclusive of interest and costs.

### II.   Motion for Judicial Notice by Defendants

    Under Federal Rule of Evidence 201, a court may take
judicial notice of any adjudicative fact that is generally known
within the court's territorial jurisdiction or capable of
accurate and ready determination by resort to sources whose
accuracy cannot reasonably be disputed.  Fed. R. Evid. 201(b).
"A court must take judicial notice if requested by a party and
supplied with the necessary information."  Fed. R. Evid.
201(c)(2).  Judicial notice is appropriate when deciding a
motion to dismiss because "[j]udicial notice may be taken at any
stage of the proceeding."  Fed. R. Evid. 201(f).  See also
O'Boyle v. Braverman, 337 F. App'x 162, 164 n.2 (3d Cir. 2009)
("Although the general rule is that a district court may not

look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss, we have acknowledged that the court may also consider matters of which judicial notice may be taken . . . ." (quoting Staehr v. Hartford Financial Services Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008)).

While the Court may take judicial notice of adjudicative facts, it may also take notice of public reports and filings, such as those prepared by an administrative agency or pursuant to government regulation, to extent they have indicia of authenticity.  See Sturgeon v. Pharmerica Corp., 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020); Roane Cty. v. Jacobs Eng'g Grp., Inc., 2020 WL 2025613, at *2 (E.D. Tenn. Apr. 27, 2020).  However, here Defendants' request also includes other types of documents.

Defendants separate out their request into three categories of documents: Group 1, comprising of Exhibits A, G, and J, purported to be incorporated into the Amended Complaint by reference; Group 2, comprising of Exhibits B, C, D, E, F, H, and I, purported to be documents published by the Food and Drug Administration ("FDA"); and Group 3, comprising of Exhibits K, L, M, and N, purported to be corporate filings of public record.

With regard to Group 1 documents, Exhibit A and G are cited within the Consolidated Amended Complaint ("CAC").  However, Exhibit J is not cited in the CAC, which is the operative

document at the motion-to-dismiss stage.  See O'Boyle, 337 F. App'x at 164 n.2.  Therefore, Exhibit J will not be judicially noticed out of this group of materials as a document relied upon by Plaintiffs.

With regard to Group 2 documents, B, C, D, E, F, H, and I are all documents created by the FDA.  (ECF No. 88).  These documents will be judicially noticed as authentic public reports or other documents prepared by an administrative agency pursuant to government regulation.

With regard to Group 3 documents K, L, M, and N, these documents were provided by Defendants to the Security Exchange Commission, the United States Patent and Trademark Office, and Delaware's Secretary of State by Defendants.  (ECF No. 88). These documents will be judicially noticed as authentic public filings to a regulatory agency.

For avoidance of any doubt, the Court emphasizes that in taking judicial notice of the aforementioned documents, it is not taking the factual findings in the various documents as proven to be true, but rather merely acknowledging the existence of such reports issued by the FDA, the Defendants' public record filings, and materials cited or otherwise relied upon in the CAC.  Overfield v. Pennroad Corp., 146 F.2d 889, 898 (3d Cir. 1944)(noting that "Courts can and do take judicial notice of" governmental reports such as "Congressional proceedings" and

13

"the existence of facts disclosed by them"); In re Amarin Corp. PLC Sec. Litig., 2021 U.S. Dist. LEXIS 59840, 2021 WL 1171669, at *7 (D.N.J. Mar. 29, 2021) (explaining the nuance is that "it is improper for a court to take judicial notice of the veracity and validity of a public document's contents when the parties dispute the meaning and truth of the contents.") (internal quotation marks omitted); Sturgeon, 438 F. Supp. 3d at 259 ("The Court declines to foreclose all proof on such a central question by looking outside the record at the motion-to-dismiss stage, so these materials will be judicially noticed only for their existence and not for their truth.").

It is clear from the briefing on this notice (ECF Nos. 99 and 103), as well as from the contentions raised in Defendants' Motion to Dismiss, that the parties are contesting the truth and meaning of the contents of several of these documents.  See (ECF Nos. 99 and 103) (e.g., ECF No. 99 at 4: Plaintiffs disagree with Defendants' argument that "because the FDA says it *now* is focusing on heavy metal content in baby foods, the elevated heavy metals in Defendants' baby foods pose no danger to infants and children.") (emphasis in original); compare (ECF No. 103 at 1: "[D]efendants asked the Court to take judicial notice of the fact that these documents exist, which is proof that it is the FDA's job to make determinations about food safety and appropriate levels of heavy metals.").

14

Therefore, this Court will take judicial notice of the exhibits raised by the Defendants in their Motion for Judicial Notice, with the exception of Exhibit J, but the Court notices them only for their existence and not for their truth, for any other substantive finding would be premature at the motion-to-dismiss stage.[4]

### III. Standard for a Motion to Dismiss

Defendants move to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rule of Civil Procedure 12(b)(6), ("Rule 12(b)(6)"), on several grounds: Defendants argue that Plaintiffs do not have Article III standing and lack an injury-in-fact and fail to provide grounds for injunctive relief; that Plaintiffs' claims are preempted by the FDA or that the FDA has primary jurisdiction

---

[4] This Court acknowledges receipt of two letters requesting and opposing Judicial Notice of two additional cases.  (ECF Nos. 105 and 106).  On a motion to dismiss a court may consider matters of public record, including another court's opinion, without causing the motion to be treated as one for summary judgment pursuant to Fed. R. Civ. P. 12(d).  Korotki v. Levenson, No. 20-11050, 2021 WL 2650775, at *3 (D.N.J. Jun. 28, 2021) (citing Holmes v. Christie, No. 16-1434, 2018 WL 6522922, at *1 n.1 (D.N.J. Dec. 12, 2018) *vacated* in part on other grounds and *aff'd* in part (quoting Johnson v. Pugh, No. 11-0385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013)).  This Court has reviewed these submissions and notes that the cases that are either from outside of the Third Circuit or from a sister court within this District, both of which are not binding authority but can be seen as persuasive authority the Court can consider without causing the motion to be treated as one for summary judgment.

over these claims; that Plaintiffs have filed against an incorrect party; and that Plaintiffs have failed to state a claim upon which relief can be granted with regard to their implied warranty claim and deception claim.  However, because the Court agrees with Defendants on the issue of standing, it need not address Defendants' other proposed grounds of dismissal.

First, the Court must address the issue of standing, because without standing there is no "case or controversy" for the Court to adjudicate.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  Pursuant to Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack."  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  Id. (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual challenge attacks the allegations

underlying the complaint's assertion of jurisdiction, "either through the filing of an answer or 'otherwise present[ing] competing facts.'"  Id. (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

The standard for reviewing a complaint on its face — a facial attack — under Rule 12(b)(1) essentially applies the same standard under Rule 12(b)(6).  See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (citation omitted) (explaining that standing is a jurisdictional matter which should not be confused with requirements necessary to state a cause of action, but in reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff").  As Defendants mount a facial attack to the CAC, the Court will apply the familiar Rule 12(b)(6) standard to Defendants' standing arguments.

Under the 12(b)(6) standard "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To determine the sufficiency of a complaint, a court must take three steps:

(1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8.  Further, a motion to dismiss "should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

As discussed above, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider "an undisputedly authentic document that a

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**IV. Standing**

Turning to the issue of standing, "Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That case or controversy requirement is satisfied only where a plaintiff has standing." Common Cause of Pennsylvania v. Pennsylvania, 558 F.3d 249, 257-58 (3d Cir. 2009) (quoting Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269 (2008)).

There are three elements that Plaintiffs must meet to satisfy Article III standing.  First, there must be an "injury in fact," or an "invasion of a legally protected interest" that is "concrete and particularized." In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  Concreteness is determined by whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in

American courts.  TransUnion, 141 S. Ct. 2190, 2204 (2021)

(citing Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016)).  Some

intangible harms may also qualify as sufficiently concrete, such

as reputational harms, invasions of privacy, and infringements

of fundamental rights.  Id.  Second, there must be a "causal

connection between the injury and the conduct complained of[.]"

In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d

625, 633 (3d Cir. 2017).  Third, there must be a likelihood

"that the injury will be redressed by a favorable decision."

Id.  In the class action context, at least one named plaintiff

must satisfy all of these requirements.  O'Shea v. Littleton,

414 U.S. 488, 494 (1974).

Defendants contend that Plaintiffs lack standing in two

ways: that Plaintiffs fail to allege an injury-in-fact, and that

any claim of standing based on future potential injury also

fails because such injuries are neither imminent nor

irreparable.  (ECF No. 89 at 9-15).  Notably, the Plaintiffs do

not allege physical injury.  (ECF No. 104 at 1).  Instead,

Plaintiffs argue an economic theory of harm and future injury.

**a. Economic Injury-in-Fact**

The requirements for an injury-in-fact are well

established: a plaintiff must show that they have suffered "an

invasion of a legally protected interest" that is "concrete and

particularized" and "actual or imminent, not conjectural or

hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Particularization requires that a plaintiff has suffered the injury in a "personal and individual way". Spokeo, Inc. v. Robbins, 578 U.S. 330, 339 (2016) (internal citations omitted). Concreteness requires that an injury must "actually exist" and not be abstract. Id. at 340. The Third Circuit has held that "monetary harm is a classic form of injury-in-fact." Danverse Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 293 (3d Cir. 2005). With regard to economic injury, Plaintiffs alleges in essence two basic theories of economic injury: Plaintiffs were denied the benefit of their bargain[5] and that Plaintiffs paid an unfair premium price for the product, all due to Defendants' allegedly deceptive marketing practices. (ECF No. 81 at 7)

    i. Benefit of the Bargain

    Under the "benefit of the bargain" theory, a plaintiff can allege facts to show that she bargained for a product at a certain value but received a product worth less than that value,

---

[5] This theory could be premised on the allegation that the product is either "worth less" than the purchase price because of a defect or entirely "worthless" in the sense that the purchaser will not use the product or never would have purchased the product in the first place if they had known of the defect. See In re Gerber Prods. Co. Heavy Metals Baby Food Litig., No. 21-269, 2022 WL 10197651 at *20 (E.D. Va. Oct. 17, 2022). This Court views each of these scenarios as a sub-set or points along the spectrum of the benefit of the bargain theory of damages.

allowing the court to calculate the difference in value between what was bargained for and what was received.  In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig., 903 F.3d 278, 283 (3d Cir. 2018).  However, "[p]laintiffs receive[] the benefit of their bargain so long as there were no adverse health consequences, and the product work[s] as intended[.]"  James v. Johnson & Johnson Consumer Cos., No. 10-0349, 2011 WL 198026, at *2(D.N.J. Jan. 18, 2011).

Plaintiffs argue that they did not receive the benefit of the bargain because they believed they were buying "healthy, nutritious" baby food products, but instead received products that were allegedly unsafe.  (ECF No. 81, passim).  However, this assertion is similar to those made in Koronthaly, James, Medley, and Hubert: Plaintiffs allege that they use the product, it was effective for its intended use, Plaintiffs were not physically injured, Defendants are alleged to have failed to warn about an alleged danger, and Plaintiffs want their money back.  Koronthaly v. L'Oreal USA, Inc., 374 Fed. App'x 257, 259 (3d Cir. 2010); James, 2011 WL 198026, at *2; Medley v. Johnson & Johnson Consumer Cos., Inc., Civil No. 10-02291, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011); Hubert v. Gen Nutrition Corp., No. 15-01391, 2017 WL 3971912, at *6, 8 (W.D. Pa. Sept. 8, 2017).  Plaintiffs purchased the baby food products from Defendants to feed their children, and these products were fully

used for their intended purposes.  (ECF No. 81 at 8-26).

Plaintiffs do not allege that their children have suffered

physical harm: the children did not starve or become nutrient

deficient.  (ECF No. 104 at 1).  Imparting nutrition is

ostensibly what Defendants advertised regarding its baby food

products.  See (ECF No. 81 at 29, 30; ¶¶96-99).

Moreover, the FDA's opinion that parents should not throw

out their supply of packaged baby foods or eliminate certain

foods to avoid toxic elements because it could result in

deficiencies in nutrients and poor health outcomes suggests that

the products are fulfilling their intended purpose of providing

nourishment to babies and infants.  While the FDA's statement is

not determinative in this Court's decision, it substantially

weakens and makes less plausible Plaintiffs' claims that they

did not receive the benefit of their bargain with regard to

Defendants' baby food products.  See FDA Letter to Industry on

Chemical Hazards, including Toxic Elements, in Food and Update

on FDA Efforts to Increase the Safety of Foods for Babies and

Young Children, FOOD & DRUG ADMIN. (Mar. 5, 2021),

https://www.fda.gov/food/cfsan-constituent-updates/fda-letter-

industry-chemical-hazards-including-toxic-elements-food-and-

update-fda-efforts-increase.

To the extent that Plaintiffs allege that Defendants

misrepresented their products, Plaintiffs have not alleged

sufficient facts to support their claims.  To allege economic harm under the benefit-of-the-bargain theory it is required that plaintiffs identify the specific misrepresentation that induced their purchase.  Estrada, 2017 WL 2999026 at *9.  By way of example, in In re Mercedes-Benz Emissions Litig., plaintiffs were induced to purchase "BlueTEC" vehicles because they were allegedly better for the environment.  In re Mercedes-Benz Emissions Litig., No. 16-881, 2016 WL 7106020 (D.N.J. Dec. 6, 2016).  Plaintiffs pointed to specific claims made by Defendants about this technology, such as "the world's cleanest and most advanced diesel" with "ultra-low emissions, high fuel economy and responsive performance" that emits "up to 30% lower greenhouse-gas emissions than gasoline" and that the BlueTEC vehicles "convert[ ] the nitrogen oxide emissions into harmless nitrogen and oxygen" and "reduces the nitrogen oxide in the exhaust gases by up to 90%." Id. at *5.  These claims are highly specific to the inducement alleged by plaintiffs.

In the instant case, Plaintiffs assert that they believed the products were "safe" for babies, which is fairly nonspecific, and point to claims that relate to Defendants' advertising and labeling related to its organic, non-GMO ingredients, that the products were labeled as "perfect," "nutritious," and "packed with essential vitamins and minerals." (ECF No. 81 at 47-48).  None of these descriptors relate to

heavy metals.  Nor do Plaintiffs contest that any of these specific claims are not true: there are no allegations that the baby food products at issue do not contain the vitamins and minerals that they claim to contain, nor do they contest that the ingredients are not non-GMO or not organic.  All of these claims could be true even with the presence of heavy metals within the products.  See FDA Response to Questions About Levels of Toxic Elements in Baby Food, Following Congressional Report Constituent Update, FOOD & DRUG ADMIN. (Feb. 16, 2021), https://www.fda.gov/food/cfsan-constituent-updates/fda-response-questions-about-levels-toxic-elements-baby-food-following-congressional-report (stating that heavy metals, such as arsenic and lead, are present in the environment and because of this, such compounds cannot be completely avoided in the fruits, vegetables, or grains that are the basis for baby foods, juices, and infant cereals made by companies or by consumers who make their own foods, or through organic farming practices, and that the goal is to reduce exposure to the extent feasible).

Finally, Plaintiffs' claim that the presence of heavy metals rendered the baby food products worthless does not save their benefit of the bargain economic injury claim.  Without the factual support of adverse health consequences or plausible allegations of future risk, Plaintiffs cannot assert that the products are valueless.  James, 2011 WL 198026, at *2; In re

25

Fruit Juice Prods., 831 F. Supp. 2d 507, 512 (D. Mass 2011)).

Given this, Plaintiffs cannot establish Article III standing with a benefit of the bargain theory of economic harm.

###### ii. Premium Price

Plaintiffs also allege that because of Defendants' alleged lack of disclosure and deceptive advertising, Plaintiffs were induced to purchase Defendants' baby food products at a higher, "premium" price than they would have had Plaintiffs known about the baby food products alleged heavy metal content.  A premium price theory of injury is premised on a plaintiff alleging that the defendant unlawfully advertised the contested product as being superior to others, which allows the court to calculate the financial injury by determining the "premium" that a plaintiff was induced to pay by unlawful advertisements.  In re Johnson & Johnson, 903 F.3d at 283.

While Plaintiffs allege that the advertisements for Defendants' baby food products gave the impression of higher quality, the Amended Complaint did not put forward facts regarding any comparable, cheaper products to show a premium price was paid for the baby food products, nor were the advertisements of Defendants' baby food products explicitly advertised as "superior to" other products.  See (ECF No. 81 at 29-30 at ¶¶96-99; 48 at ¶c,) (images of Defendants' baby food products and quotes from Defendants' advertisements which offer

26

no comparison to any other products); (ECF No. 104 at 14-15); Hubert, 2017 WL 3971912, at *7-8 ("It was significant in the court's analysis that the plaintiff did not allege that Johnson & Johnson advertised baby powder as superior to other products, nor did she identify any comparable, cheaper products to show that baby powder was sold at a premium price.") (citing Estrada v. Johnson & Johnson, No. 16-7492, 2017 WL 2999026, at *15 (D.N.J. Jul. 14, 2017).

Threadbare allegations that, had a plaintiff known about an alleged deficiency in a product, they would not have paid that price for said product, without more, is insufficient to find an injury-in-fact. Estrada, 2017 WL 2999026, at *15 (referencing Lassen v. Nissan N. Am., Inc., 211 F. Supp. 3d 1267, 1280 (C.D. Cal. 2016) ("It is true that both overpayment and diminution in value are theoretically cognizable injuries-in-fact. . . But, a plaintiff must still plead facts sufficient to establish these injuries-in-fact.") (internal citation omitted)).

In Estrada, the plaintiff alleged that she was deceived into believing that the baby powder at issue was "safe" based on representations made on the label of the product. However, the court found that her premium product argument failed because the plaintiff did not allege that the defendant actually advertised the product as superior to others and that the amended complaint did not specify any comparable, cheaper products to demonstrate

27

that a premium price was in fact paid.  Id. at *15.

More recently, in Kimca v. Sprout Foods, Inc., the case also suffered from "threadbare" pleadings.  Kimca v. Sprout Foods, Inc., No. 21-12977, 2022 WL 1213488 (D.N.J. Apr. 25, 2022).  In Kimca, the court required additional factual support for Plaintiffs' allegations such as specifically identifying alternative or cheaper products, demonstrating that the plaintiff paid a premium price. Id. at *8.[6]

Here, Plaintiffs fail to allege anything beyond threadbare "but-for" assertions: "If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods".  (ECF No. 81, passim)  They do not specify any alternative, cheaper products, or allege that they have spent time or money acquiring any alternative products.[7]  Plaintiffs

_____

[6] In relation to threadbare assertions being insufficient, the Kimca Court also noted that the plaintiffs in that case failed to substantiate or identify any concrete harm resulting from the consumption of the allegedly defective product such as the development of ovarian cancer; or that, other than the alleged risk of harm, that the product did not perform the intended purpose, e.g., that plaintiffs paid for juice and received juice.  Id. at *8-9.

[7] Further, Plaintiffs do not identify any specific, concrete harm from the consumption of the allegedly defective product, nor do they allege that they have spent time or money on health examinations, testing, or monitoring related to any harm from the consumption of the baby food products; and they do not argue that their children did not receive baby food, or that their children developed nutritional deficiencies or did not maintain

simply have not provided sufficient facts for this Court to find standing under a premium price economic injury theory.

### b. Future Injury

Additionally, Plaintiffs seek injunctive relief from Defendants' allegedly deceptive marketing practices.  (ECF No. 81 at 113).  While future harm may be sufficient to satisfy the "concreteness" requirement in the injury-in-fact analysis and allow a plaintiff to pursue injunctive relief, the risk of harm must be "sufficiently imminent and substantial," such that exposure to the risk of harm itself generates an independent injury, such as emotional injury.  TransUnion, 141 S. Ct. at 2210-11.  There must be "sufficient likelihood" that the risk will materialize for speculative risk-of-injury claims to be sufficient to create standing.  Id. at 2212.

Plaintiffs do not allege sufficient facts for the Court to determine that there is an imminent risk of harm.  Plaintiffs do not allege any infant formula or baby food specific FDA standards with regard to heavy metal levels, nor do they provide Defendants' internal heavy metal testing levels or related guidelines or procedures, nor provide other comparable measurements to make the risk of harm less speculative.  (ECF No. 104 at 13); see Kimca, 2022 WL 1213488, at *5-6.

---

a healthy weight from consuming the allegedly defective baby food products.

Plaintiffs have alleged that the baby food products contain heavy metals, and that heavy metals can be unsafe and dangerous, but fail to establish a causal link: that the levels present in the baby foods at issue are at dangerous levels and therefore are likely to cause physical harm.  Without that causal link, Plaintiffs cannot establish injury as required for Article III standing.  See Boysen v. Walgreen Co., No. 11-06262, 2012 WL 2953069 at *7 (N.D. Cal. Jul. 19, 2012) ("The complaint . . . does not expressly allege that the levels [of lead or arsenic] present in defendant's juice tend to cause physical harm.").

Further, Plaintiffs here have not alleged standing for injunctive relief.  The Third Circuit has held that once a plaintiff knows of the health risks of a product alleged to be improperly marketed, the "law accords people the dignity of assuming that they act rationally, in light of the information they possess."  In re Johnson & Johnson, 903 F.3d at 293 (citing McNair v. Synapse Group, Inc., 672 F.3d 213, 225 (3d Cir. 2012).  Unlike a case of a pervasive environmental toxin causing a risk of continued exposure, the likelihood of future injury is not plausible here because of the knowledge the plaintiff has regarding the health risks associated with a product and the free will not to use the product again.  Id. (declining to "give cognizance to this sort of 'stop me before I buy again' claim.").

In Plaintiffs' Amended Complaint, Plaintiffs do not articulate any facts that suggest they would purchase Defendants' products as presently formulated in the future, and in any event the Court "must assume Plaintiffs will act rationally" by not purchasing a product they allege is misleadingly labelled.  Pierre v. Healthy Bev., LLC, No. 20-4934, 2022 WL 596097, at *6 (E.D. Pa. Feb. 28, 2022) (citing Johnson & Johnson, 903 F.2d at 293); see also In re Subaru Battery Drain Prods. Litig., No. 20-3095, 2021 WL 1207791, at * 31 (D.N.J. Mar. 31, 2021).

Even if Plaintiffs would purchase the baby food products again were the products properly labeled or reformulated, and even if Plaintiffs inability to trust Defendants' labeling in the future prevents them from purchasing the products against their wishes, such claims lack the necessary imminency and do not result in a substantial risk of harm sufficient to generate an independent injury.  See Pierre, 2022 WL 596097 at *6; see also TransUnion 141 S. Ct. at 2210-11.

Therefore, Plaintiffs have failed to demonstrate standing to pursue injunctive relief.

### c. Supplemental Authority

Both Plaintiffs and Defendants have requested the Court to take notice of three recently decided cases they feel are pertinent to the instant case.  Plaintiffs have put forth the

case Kochar v. Walmart, Inc., (No. 21-cv-02343, 2022 U.S. Dist. LEXIS 74788 (N.D. Cal. Apr. 25, 2022)), arguing that it supports a finding by this Court that Plaintiffs have provided sufficient facts to support standing in the instant case. (ECF No. 106). In contrast, Defendants argue that Kimca v. Sprout Foods, Inc., No. 21-12977, 2022 WL 1213488 (D.N.J. Apr. 25, 2022), is more applicable and militates against this Court finding standing for Plaintiffs. (ECF No. 105). Defendants also submitted for the Court's review In re: Gerber Products Company Heavy Metals Baby Food Litigation, No. 21-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022), a recent district court decision which involved similar allegations. (ECF No. 109). Each case will be discussed briefly below.

Plaintiffs argue that Kimca was incorrectly decided, purportedly misapplying the pleading standard which accepts plaintiff's claims as true, specifically in relation to the allegation that the plaintiffs would have paid less or would not have purchased the baby food products at issue had they known those products contained measurable levels of heavy metals. See (ECF No. 106 at 2-3). The Court has reviewed these submissions and cases and discusses them below.

First, there are important differences between the pleadings in Kocha and Kimca. In Kochar, the allegations specify that the levels of heavy metals were above "naturally

32

occurring" levels.  _See_ Class Action Complaint at 25-27, _Kochar v. Walmart, Inc._, 2022 U.S. Dist. LEXIS 74788 (N.D. Cal. Jan. 12, 2022) (No. 21-02343) (hereinafter "_Kochar_, Class Action Complaint").  The Class Action Complaint in _Kochar_ also outlined the average levels of certain heavy metals in foods regularly consumed by children and infants per FDA testing to provide a comparative baseline necessary for the court to assess risk of harm for standing purposes.  _Id_. at 15-17.  Walmart also had its own internal standards for some of the heavy metals at issue (which it changed without notice to consumers), as well as food safety guidelines that it provided to infant food suppliers that included maximum concentrations for lead and arsenic.  _Id_. at 14, 25.

Further, Walmart allegedly was in possession of testing data showing high levels of heavy metals present in its products based on its own internal standards.  _Id_. at 42.  These facts, when seen in the light most favorable to the plaintiffs, elevate the _Kochar_ plaintiffs' argument from mere speculation of potential harm to a more immediate, quantifiable, risk of harm to their babies and young children.  _TransUnion_, 141 S. Ct. at 2211.  Moreover, the pleadings in _Kochar_ properly articulated a "premium price" economic injury by stating that the plaintiffs had "spent their own time and money dealing with purchasing safer baby food alternatives."  _Kochar_, Class Action Complaint

at 39.  The Kochar plaintiffs also specified other distinct
economic harm when alleging that there were costs and expenses
incurred related to their efforts to ensure that their babies
have not been harmed, as well as costs and expenses for
treatments the their babies have received, which demonstrates
that the Kochar plaintiffs' have suffered an independent injury
by the exposure to the risk itself.  Id. at 42; TransUnion, 141
S. Ct. at 2211.

In contrast, the plaintiffs in Kimca, as well as Plaintiffs
in the instant case, failed to show physical injury from the
product and fail to demonstrate an immediate risk of harm in
similar ways.  The Kimca plaintiffs did not allege that any
children suffered injury due to the baby food products, similar
to the instant case.  Kimca, 2022 WL 1213488 at *9; compare (ECF
No. 104 at 1) ("Plaintiffs allege that they did use the product
as intended and did not suffer physical harm.") (emphasis in
original)); (ECF No. 81 at 7, 32-33) (alleging only economic
harm and speculative future injury).  The Kimca plaintiffs did
not allege any infant formula or baby food specific FDA
standards with regard to heavy metal levels, nor did they
provide Defendants' internal heavy metal testing levels or
related guidelines or procedures, nor did they provide other
comparable measurements to make the risk of harm less
speculative as done in Kochar.  See Kimca, 2022 WL 1213488 at

*5-6; compare (ECF No. 104 at 13).

Without a causal link to demonstrate that the levels heavy metals allegedly present in the Kimca baby food products were dangerous, the Kimca plaintiffs could not establish a future risk-as-injury as required for Article III standing, which is the same missing link in the instant case.  See Boysen, 2012 WL 2953069 at *7 ("The complaint . . . does not expressly allege that the levels [of lead or arsenic] present in defendant's juice tend to cause physical harm.").

Turning to economic injury, the plaintiffs in Kimca failed to allege economic injury beyond threadbare assertions as do Plaintiffs in this matter in contrast to the more detailed, fulsome pleadings in Kochar.  See supra 29; Kochar, Class Action Complaint at 39; Kimca, 2022 WL 1213488 at * 8 (stating plaintiffs "would not have paid as much for the Baby Food Products if they had known they contained heavy metals"); compare (ECF 81 at 8-26) (alleging "[i]f Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods.").

These important differences with regard to the facts alleged to support standing in Kochar and the deficiency in the facts that failed to create standing in Kimca and the instant case are readily apparent on the face of the pleadings and

35

therefore this Court declines the request of Plaintiffs to present additional briefing to distinguish Kimca from this case. (ECF No. 106 at 3).  Plaintiffs' argument that Kimca was wrongly decided because the court in Kimca misapplied the pleading standard for a facial attack on Article III standing at the motion to dismiss stage also fails.  (ECF No. 106 at 2).

Plaintiffs argue that the Kimca court "impermissibly disregarded" the allegations that "they would have paid less or would not have purchased the baby food products at issue if they had known the baby food products contained measurable levels of heavy metals," (ECF No. 106 at 2-3).  But taking such an allegation as true does not automatically convert that allegation into an economic injury.  In Estrada, the court faced the same theory of harm (injury-in-fact under the benefit-of-the-bargain theory premised on an alleged omission) and found that such an injury is not cognizable except in circumstances where the plaintiff has pled that the defendant was under an affirmative obligation to disclose the omitted fact.  Estrada, 2017 WL 2999026 at *6 (comparing Koronthaly v. L'Oreal USA, Inc., 374 F. App'x 257, 259 (3d Cir. 2010) (finding no standing where the plaintiff alleged that defendant failed to disclose the presence of lead in the product at issue, where FDA guidelines stated that the level of lead in the product did not require a warning), and Boysen v. Walgreen Co., No. 11-06262,

2012 WL 2953069 at *7 (N.D. Cal. Jul. 19, 2012) (finding the plaintiff's allegations that he suffered economic injury as a result of the defendant's failure to disclose the presence of arsenic and lead in its products were insufficient to constitute Article III standing, where the plaintiff did not allege that defendant violated FDA guidelines), with Brod v. Sioux Honey Ass'n, Co-op., 927 F. Supp. 2d 811, 820 (N.D. Cal. Feb. 27, 2013), aff'd, 609 F. App'x 415 (9th Cir. 2015) (finding standing where the plaintiff alleged that the defendant violated its state law "duty to label Sue Bee Honey in a way that discloses the removal of pollen to potential consumers."). The Plaintiffs in this case have not alleged that Defendants were under any legal obligation to disclose the presence of heavy metals in its baby food products, nor have Plaintiffs alleged that Defendants had a fiduciary relationship with them that would necessitate such a disclosure. Thus, Plaintiffs' argument that Kimca was wrongly decided is unavailing.

The Gerber Products case was decided on October 17, 2022. In re Gerber Prods. Co. Heavy Metals Baby Food Litig., No. 21-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022). The Gerber Products litigation stems from the same House of Representatives Subcommittee report that alleges popular brands of baby food are tainted with "dangerous" levels of heavy metals. Id. at *1. Plaintiffs in Gerber Products made essentially the same

37

allegations as in the instant case: "Defendant deceptively led them to believe the Baby Food Products were safe and, had they known the Baby Food Products contained or were at a material risk of containing harmful Heavy Metals, they would not have purchased them." Id. at *6. The court in Gerber Products addressed the same economic theories of harm, the price premium and benefit of the bargain, and found them lacking. Id. at *6-10. The Gerber Products court found that plaintiffs did not allege any facts substantiating their conclusory allegations of paying a premium price and that to determine the economic value of the premium they allegedly paid the court would have to resort to "mere conjecture." Id. at *10.

As for the plaintiffs' benefit of the bargain claim, the court found that plaintiffs did not allege that the baby food products failed to provide plaintiffs' children with "nourishment or to otherwise perform as intended. To state a concrete and particularized injury, a plaintiff must do more than allege she did not receive the benefit she thought she was obtaining." Id. at *8 (emphasis in original). Because plaintiffs in that case did not allege any physical injury or an imminent, substantial risk of harm of developing any ailment, the court stated that it "must conclude the Baby Food Products were 'safe as to them,'" comparing the baby food products to the lipsticks with lead in Koronthaly. Id. The court specifically

38

cited Kimca as "more persuasive" and that the plaintiffs had similarly deficient pleadings to their case.  Id. at *10.

This Court finds the Gerber Products decision highly persuasive and adopts its reasoning here.  The Court does so noting that the Gerber Products pleadings went even further than Kimca, and could be said to approach the level of factual support alleged in Kochar.  The complaint dismissed in Gerber Products utilized comparisons that were both categorically closer to the alleged products at issue and used objective FDA data for these comparisons.

For example, Kimca Plaintiffs compared their baby food products at issue with heavy metal allowances set for drinking water by the Environmental Protection Agency, (Kimca, 2022 WL 1213488 at *4), which, as the Kimca decision notes, is not a comparison sufficient to create a plausible inference of imminent, personal harm necessary for standing.  Id. at *6.

> Most importantly, it is not clear that the "accepted standards" identified in the FAC are applicable to baby food.  The FAC borrows standards promulgated in different contexts.  For example, it references the FDA's 10 ppb limit on arsenic in bottled water, (FAC ¶ 70), the EPA's 10 ppb limit on arsenic in drinking water, (FAC ¶ 70), the EPA's 2 ppb limit on mercury in drinking water, (FAC ¶ 77), the EPA's 5 ppb limit on cadmium in drinking water, (FAC ¶ 80), the FDA's 5 ppb limit on cadmium in bottled water, (FAC ¶ 80), and the WHO's 3 ppb limit on cadmium in drinking water, (FAC ¶ 80).  However, the FAC does not contain any background information or explanation indicating that these are apt comparisons for use in the context of baby

food. . . In fact, the FAC leads to the inference
that the opposite is true: it states that the FDA
is considering setting the "action level" for
arsenic in rice cereal for infants at 100 ppb, more
than ten times the FDA's limit on arsenic in bottled
water. (FAC ¶ 70). This suggests that the
applicable limits for baby food are much higher
than those used for bottled and drinking water.
Moreover, courts have declined to use similar
cross-product comparisons to establish injury at
the motion to dismiss stage.

Id.

In Gerber Products, some of the comparisons alleged are
much closer to the mark, but still fell short in meeting the
imminency and personal harm necessary for standing.  For
example, the Gerber Products Plaintiffs compared arsenic levels
in rice flour concentrations to the limitations the FDA has
affirmatively set for arsenic in infant rice cereal and found
that Gerber "routinely" used flour that was very close to the
FDA limit for rice cereal products.  Class Action Complaint at
31-32, In re Gerber Prods. Co. Heavy Metals Baby Food Litig.,
2022 WL 10197651 (E.D. Va. Oct. 17, 2022) (No. 21-269).  To
bolster this claim, Gerber Plaintiffs pointed to the fact that
the rice flour had nine times the amount of arsenic than the
FDA-permitted levels set for apple juice and water.  Id. at 31.
As discussed in the Kimca decision above, cross-product
comparisons are not sufficient, even if focusing on FDA approved
metrics and FDA approved testing modalities between varying
products.

In contrast, the Kochar Plaintiffs utilized FDA measured and reported averages of heavy metal concentration data for the products directly at issue.  See Kochar, Class Action Complaint at 16; Kochar v. Walmart, No. 21-02343, 2022 U.S. Dist. LEXIS 74788 (N.D. Ca. Apr. 25, 2022) (Order).  By way of example, Walmart's Organic Rice Rusks and Little Hearts were tested and compared to the average cadmium levels measured by the FDA in Teething Biscuit and Toddler Puff product categories, to which the Organic Rice Rusks and Little Hearts belong.  Id.  Further, the Kochar Plaintiffs' testing used the same methodology the FDA used to measure concentration elements in its study, further supporting the notion that their results reflect a more accurate and direct comparison from which a factfinder can draw reasonable conclusions. Id. at 15.

In this matter this Court has "examine[d] the allegations in the complaint from a number of different angles" in order to see if the "purported injury can be framed in a way that satisfies Article III." Finkelman v. Nat'l Football League, 810 F.3d 187, 197 (3d Cir. 2016).  Ultimately, the Plaintiffs' claims do not satisfy the standing requirements for a "case or controversy" required by Article III.  In finding the Gerber Products analysis sound, if the more detailed and fulsome allegations found in Gerber Products are not enough to confer standing, the thin allegations in this matter surely fall short

of the mark.  Therefore, the Motion to Dismiss must be granted
and the Court will not stray to assess any additional issues
presented by this case which now reside outside of its
jurisdictional ambit.

> **V.    Non-Party Motion for Intervention for the Purpose of a
> Stay pursuant to the First-Filed Rule**

The Movants file this Motion for Intervention to seek a
stay pursuant to the Federal Rules of Civil Procedure 24(b)
("Rule 24(b)").  ECF No. 84 at 1.  Rule 24(b)(1)(A) and (B)
allows for permissive intervention, whereby the Court may permit
anyone to intervene who is given a conditional right to
intervene by statute or has a claim or defense that shares with
the main action a common question of law or fact.  See Fed. R.
Civ. P. 24(b).  However, given that the underlying claims are
being dismissed for want of standing, the motion for
intervention is moot.

**CONCLUSION**

The Court recognizes that Plaintiffs have reason to be
concerned, even alarmed, by the allegations raised in the House
Subcommittee's reports, as any parent would be in their desire
to protect their children from harmful substances.  However, the
facts as alleged in this matter do not establish an injury-in-
fact direct and concrete enough to bring these claims in court
whose power is limited by design by Article III the

Constitution.  In the absence of sufficient allegations of concrete and present harm and a plausible measure by which to assess it, "[o]nce [a] product [is] consumed,  . . . . there [can be] no economic injury for Plaintiffs to complain of, and the fear of future injury is legally insufficient to confer standing."  James, 2011 WL 198026, at *2.

For the reasons discussed above, the Motion to Intervene will be dismissed as moot, the Motion for Judicial Notice will be granted, and the Motion to Dismiss will be granted.

An appropriate Order consistent with this Opinion will be entered.

Date: October 31, 2022                       s/ Noel L. Hillman
At Camden, New Jersey            NOEL.L. HILLMAN, U.S.D.J.